SENIOR ACCOUNTANTS, ANALYSTS AND APPRAISERS
ASSOCIATION v CITY OF DETROIT

Docket No. 121493. Submitted February 15, 1990, at Detroit. Decided
March 27, 1990.

The City of Detroit (respondent) hires people to fill summer
positions of Junior Job Development and Training Specialist
and Intermediate Job Development and Training Specialist
through a program funded by the state. Both positions, includ-
ing summer employees, have by history and practice been
included in the Senior Accountants, Analysts and Appraisers
Association collective bargaining unit (petitioner). Although
those persons hired to fill the summer positions are considered
provisional employees with no civil service status and can be
terminated at any time with or without cause, they do accrue
sick and vacation leave, compensatory time, and pension cred-
its. The sick leave time can be carried over from year to year if
a person is rehired the following summer. On July 1, 1987,
respondent promulgated a policy setting forth guidelines for
drug testing of candidates for employment and employees
returning to active employment. In March, 1988, when the
petitioner became aware of the policy, respondent had already
begun filling the summer positions. Petitioner filed a complaint
with the Michigan Employment Relations Commission chal-
lenging the right of respondent to implement, without first
bargaining over the issue, a drug testing program for persons
hired to fill the summer positions. The MERC found that respon-
dent had a duty to bargain before implementing drug testing
for persons rehired from previous summer employment, but no
duty to bargain over the drug testing of new applicants. Re-
spondent appealed, contending that those persons rehired are
not public employees entitled to bargaining rights under its
contract with petitioner.

The Court of Appeals held:

1. The MERC correctly found that respondent's rehiring prac-

REFERENCES
Am Jur 2d, Labor and Labor Relations § 674.
See the Index to Annotations under Collective Bargaining; Drugs
and Narcotics; Part-Time Employment.

tice created an expectancy of return among those persons rehired for which they could be classified as regular employees protected by the collective bargaining agreement in effect between petitioner and respondent. Therefore, respondent could not treat them as new applicants for the purpose of drug testing. Respondent had a duty to bargain over the drug testing of the people rehired.

2. Respondent had no duty to bargain over the drug testing of new applicants, as no employment relationship existed between respondent and the new applicants until they were hired. As to new applicants, drug testing was a recruiting requirement.

3. The MERC's findings of fact and conclusions of law are supported by competent, material, and substantial evidence on the whole record.

4. The issue whether respondent may drug test its employees as part of a physical examination under the collective bargaining agreement was not decided by the MERC and, therefore, was not addressed by the Court of Appeals.

Affirmed.

LABOR RELATIONS — PUBLIC EMPLOYEES — SUMMER EMPLOYMENT — REHIRED EMPLOYEES — NEW EMPLOYEES — DRUG TESTING.

The practice of the City of Detroit of rehiring persons to fill summer positions from year to year created an expectancy of return among those rehired for which they could be classified as regular employees protected by the collective bargaining agreement in effect between the city and the collective bargaining unit in which those persons have been included; the city therefore could not arbitrarily promulgate and implement a policy of drug testing those persons prior to rehiring them, but was first required to bargain with the collective bargaining unit for the right to implement such a policy; the city has no duty to bargain over the drug testing of new applicants, however, as no employment relationship exists between the city and those persons until they are hired; as to new applicants, drug testing is a recruiting requirement.

*O'Connor & Youmans, P.C.* (by *Doyle O'Connor*), for petitioner.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters* and *William G. Ashworth,* Assistant Corporation Counsel, for respondent.

Before: DANHOF, C.J., and BRENNAN and G. S. ALLEN,* JJ.

PER CURIAM. Respondent, the City of Detroit, appeals as of right from a decision and order of the Michigan Employment Relations Commission entered on September 19, 1989, finding that respondent had a duty to bargain before implementing drug testing for persons rehired from previous summer employment as Junior Job Development and Training Specialists (JDTS) and Intermediate Job Development and Training Specialists (IDTS). We affirm.

Respondent argues that the MERC erred by ruling that respondent had a duty to bargain over the drug testing of persons rehired into its summer job training program from previous summers, under the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* Respondent contends that "rehires" are not public employees entitled to bargaining rights under its contract with petitioner, the Senior Accountants, Analysts and Appraisers Association. We disagree.

We adopt the facts set forth by the MERC:

On July 1, 1987, Respondent, through its Personnel Department, promulgated a policy entitled "guidelines re drug testing of candidates for employment and employees returning to active employment." It read in pertinent part as follows:
1. Prospective new hires from open-competitive eligible lists.
—All candidates for all jobs are to be sent for drug screen as part of the pre-employment medical evaluation.
2. Former employees being certified from "block-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ing" or preferred eligible lists (includes laid off persons and approved reinstatements).

—All persons for all jobs who have been off the City payroll for more than ninety (90) calendar days shall be sent for drug screen as part of the pre-employment medical evaluation required of all persons off the payroll for more than ninety days. No testing of former employees who have been off the payroll for less than ninety days.

3. Employees returning from approved leaves of absence.

A. Educational, Military and Personal Leaves: medical evaluation by Personnel Department Physician if more than ninety (90) days; *no* drug screen.*

B. Medical Leaves, in general: medical evaluation by Personnel Department Physician (and referral to specialist where required); *no* drug screen.

C. Medical Leaves, for purpose of drug rehabilitation: medical evaluation by Personnel Department physician; documentation from physician/counselor that person no longer drug dependent *and* drug screen.

---

*Unless there is reasonable suspicion that person is a user of controlled substances.

---

4. Employees returning to work after discharge as a result of Civil Service Commission action, arbitration, court action or settlement.

—Medical evaluation by Personnel Department physician if off work more than ninety (90) days. No drug screen unless use of controlled substances was involved in case.

5. Active employees being status changed or certified to other classifications.

—No medical evaluation or drug screen unless the person is *entering* a classification which requires the 3-Item evaluation at the clinic (back x-ray, EKG and drug screen) as part of the Medical evaluation for the class.

6. Active employees being returned to work following extended sick time usage.

—No medical evaluation by the Personnel Depart-

ment unless requested by the employing department. No drug screen unless the employing department states that the employee's absence included participation in a drug rehabilitation program.

The guidelines also specify actions to be taken where drug screens are positive.

The record indicates that Charging Party did not become aware of this policy until March, 1988. At this time Respondent had begun filling the summer positions of Junior Job Development and Training Specialist (JDTS) and Intermediate Job Development and Training Specialist (IDTS). Both of these positions work in a youth summer program funded by the State. Both positions, including summer employees, have by history and practice been included in Charging Party's bargaining unit.

After learning of the new policy, Charging Party filed this charge and also sought an injunction in the Wayne County Circuit Court. An injunction was granted prohibiting drug testing on April 19, 1988. After issuance of the injunction Respondent stopped filling the JDTS and IDTS positions. On June 20, 1988, the parties agreed to the lifting of the injunction so that the positions could be filled for the summer of 1988.

The JDTSS and IDTSS are considered provisional employees, which means that they do not have civil service status and can be terminated at any time with or without cause. The record indicates that at the beginning of each summer the departments utilizing JDTSS and IDTSS send a list of names to the personnel office of Respondent's Department of Employment and Training. The record did not indicate how the departments obtain these names. The lists are then submitted to Respondent's Personnel Department. After the lists are approved, the employees on the lists are telephoned and asked to come down to fill out an application and other forms, including a statement that acknowledges their employment is for a period of 120 days or less. The employees may start

work that same day. According to the record, applicants are rejected by the Personnel Department only if they do not live in the City of Detroit. One employee who worked as a JDTS for about eight summers testified that he had never been asked to submit to a physical examination prior to employment.

The JDTSS and IDTSS accrue sick and vacation leave and comp time. The latter two are paid off at the end of their term of summer employment. However, employees may carry sick leave over from year to year. JDTSS and IDTSS also accrue pension credits.

Respondent's January, 1988 Quarterly Personnel Department Data Systems Report lists 94 JDTSS. All these names carry the designation "laid off" on the report. Thirty-five of the 94 have seniority dates listed, ranging from 1969 to 1985. This same report lists 40 IDTSS. Thirty-two of these are designated as laid off. Eleven IDTSS have a seniority date listed, including all of the eight without a layoff designation. It was not clear whether Respondent used these seniority dates in filling the JDTS or IDTS positions or for any other purpose.

At the end of the summer, the JDTSS and IDTSS receive notices stating that they are laid off.

Charging Party submitted an exhibit compiled from the Quarterly Personnel Data Reports which purported to show that of the 126 individuals who worked as JDTSS and IDTSS during 1987, 91% had also worked in 1986, 64% had also worked in 1985, and 68% had also worked in 1984. The accuracy of these figures was put in question, however, by the fact that Charging Party could not say how long a laidoff individual might be carried on the Personnel Data Reports after he or she stopped working before being removed. The record indicates, however, that a substantial number of JDTSS and IDTSS do return from year to year.

When reviewing a MERC decision, this Court must determine whether the decision is authorized

by law and whether the MERC's findings are supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e); *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974); *MESPA v Evart Public Schools,* 125 Mich App 71, 73; 336 NW2d 235 (1983), lv den 417 Mich 1100.32 (1983). "Substantial evidence" is defined as more than a scintilla, but substantially less than a preponderance, of the evidence. *Sault Ste Marie v Fraternal Order of Police Labor Council, State Lodge of Michigan,* 163 Mich App 350, 354; 414 NW2d 168 (1987), lv den 430 Mich 895 (1988).

The review must be conducted with considerable sensitivity in order that the reviewing court gives due deference to administrative expertise and does not invade the province of exclusive administrative fact-finding by displacing the agency's choice between two reasonably different views. *Mid-Michigan Education Ass'n (MEA-NEA) v St Charles Community Schools,* 150 Mich App 763, 768; 389 NW2d 482 (1986).

Approximately fifty percent of the persons hired as JDTS personnel in 1987 were rehires from 1986. Some of the summer personnel believed that they had a certain amount of seniority within the city and planned to return year after year. One individual worked eight consecutive summers. Although the JDTS and IDTS personnel are seasonal employees, they retain many "regular benefits." For example, JDTS personnel are permitted to carry over sick leave time from one year to the next. Rehires can also accumulate pension benefits.

We agree with the MERC that the city's rehiring practice created an expectancy of return among rehires for which they could be classified as regu-

lar employees protected by the collective bargaining agreement in effect between petitioner and respondent. Therefore, the city could not treat them as new applicants for the purpose of drug testing. Respondent maintained an employment relationship from year to year with rehired JDTS and IDTS personnel. We agree with the MERC that respondent had a duty to bargain over the drug testing of rehires. See *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 57-61; 214 NW2d 803 (1974).

We also agree with the MERC that respondent had no duty to bargain over the drug testing of new applicants, as no employment relationship existed between respondent and the new applicants until they were hired. As to new applicants, drug testing was a recruiting requirement. *Detroit Police Officers Ass'n,* 391 Mich 61.

We affirm the MERC's decision on this issue. The MERC's findings of fact and conclusions of law are supported by competent, material and substantial evidence on the whole record.

Respondent also argues that it has a right to drug test all bargaining unit members as part of a physical examination under the collective bargaining agreement.

We decline to consider respondent's argument. Our review is limited to issues actually decided by the lower tribunal. *Norton Shores v Carr,* 81 Mich App 715, 723; 265 NW2d 802 (1978), lv den 403 Mich 812 (1978). The issue whether respondent may drug test its employees as part of a physical examination under the collective bargaining agreement was not decided by the MERC. Accordingly, we will not decide it here.

Affirmed.