MICHIGAN COUNCIL 25, AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES v LOUISIANA HOMES, INC

Docket No. 130650. Submitted May 21, 1991, at Detroit. Decided September 6, 1991; approved for publication December 12, 1991, at 9:00 A.M.

Michigan Council 25, American Federation of State, County, and Municipal Employees, petitioned the Employment Relations Commission for certification as the collective bargaining agent of certain workers who, at the expense of the Department of Mental Health, provide direct care to mentally ill or mentally retarded persons in residential facilities operated by Louisiana Homes, Inc. AFSCME named Louisiana Homes and the Department of Mental Health as joint employers for purposes of collective bargaining. The commission found the department to be a joint employer. The department appealed.

The Court of Appeals held:

The general characteristics identifying an employer are that it selects and engages the employee, pays the employee's wages, has the power of dismissal, and has power and control over the employee's conduct. In this case, there was competent, material, and substantial evidence to support the commission's finding that the department met those characteristics with respect to the workers in question.

Affirmed.

*Webb & Hildebrandt, P.C.* (by *Alison L. Paton* and *L. Rodger Webb*), for American Federation of State, County, and Municipal Employees.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Gary P. Gordon* and *Richard P. Gartner,* Assistant Attorneys General, for the Department of Public Health.

*Zartarian & Bator, P.C.* (by *Gregory J. Bator*), for Louisiana Homes, Inc.

Before: HOLBROOK, JR., P.J., and SULLIVAN and JANSEN, JJ.

SULLIVAN, J. Respondent Department of Mental Health (DMH) appeals as of right the Michigan Employment Relations Commission's finding that the DMH is a joint employer along with respondent Louisiana Homes, Inc., a nonprofit residential home care provider, of the direct-care workers in the three Louisiana Homes facilities. The direct result of such a finding, if affirmed, is that the DMH will be required to bargain in good faith with the representative of the employees of Louisiana Homes, petitioner Michigan Council 25, American Federation of State, County, and Municipal Employees. We affirm.

The State of Michigan is responsible for providing mental health care services. *Oakland Co v Dep't of Mental Health,* 178 Mich App 48; 443 NW2d 805 (1989). In this case, the DMH contracted with Detroit-Wayne County Community Mental Health (CMH) for CMH to deliver those services, including residential facilities for mentally ill and mentally retarded persons, in Wayne County. CMH, in turn, contracted with Michigan Residential Care Alternatives (MRCA) for MRCA to operate the residential facilities in accordance with DMH and CMH guidelines. MRCA is a private, nonprofit organization whose membership includes residential care providers. MRCA does not operate residential facilities, but instead is primarily a lobbying organization. In this case, MRCA contracted with Louisiana Homes to provide the residential services to mentally ill and mentally retarded persons.

On January 29, 1988, AFSCME filed a petition to be certified to represent, for collective bargaining purposes, direct-care workers, except administra-

tors, department heads, and supervisors, of the three Louisiana Homes locations, naming Louisiana Homes as the employer. A second petition was thereafter filed, adding the State of Michigan—the DMH—as a joint employer. The DMH, through the Attorney General, responded that it did not think that the MERC had jurisdiction of this matter and that it was not going to attend the hearing. Following a hearing before a hearing referee, at which AFSCME and Louisiana Homes were represented, the MERC found, in pertinent part, that Louisiana Homes and the DMH are joint employers of the direct-care workers.

Even though it did not participate in the hearing or submit posthearing briefs, the DMH filed a delayed motion for rehearing and reconsideration, in which it requested that the hearing be reopened for additional evidence. The MERC ultimately denied the motion. The DMH now appeals the finding that it is a joint employer of the direct-care workers of Louisiana Homes.

On appeal, AFSCME argues that, by failing to participate in the MERC hearing, the DMH waived any objection it had to the MERC's finding that the DMH is a joint employer. We disagree. Even though the DMH did not participate in the proceedings, it nevertheless is an aggrieved party.

A MERC decision authorized by law will be affirmed if the factual findings by the MERC are supported by competent, material, and substantial evidence on the whole record. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 184 Mich App 551, 556-557; 459 NW2d 15 (1990). "Substantial evidence" means more than a scintilla, but substantially less than a preponderance, of the evidence. *Id.* Our review must accord due deference to administrative expertise and should not invade the province of exclusive administrative

fact-finding by displacing the agency's choice between two reasonably different views. *Id.*

On appeal, the DMH contends that the MERC's finding that the DMH is a joint employer was not supported by competent, material, and substantial evidence. We disagree. Precedent has been established for the recognition of coemployer status in collective bargaining. See *St Clair Prosecutor v AFSCME,* 425 Mich 204; 388 NW2d 231 (1986). The general characteristics of employers are: (1) they select and engage the employee, (2) they pay the wages, (3) they have the power of dismissal, and (4) they have power and control over the employee's conduct. *Saginaw Stage Employees Local 35, IATSE v City of Saginaw,* 150 Mich App 132, 134-135; 387 NW2d 859 (1986).

Before summarizing the evidence presented below, we note that full factual development was somewhat thwarted by the DMH's failure to participate.

The testimony taken before the hearing referee and the exhibits admitted revealed the following. In general, the mandatory guidelines for operating a residential care facility are established by the DMH, and CMH is bound by those guidelines by virtue of its contract with the DMH. Therefore, whether a residential care facility operates under a contract with the DMH or CMH, it nevertheless operates, in effect, under budget guidelines, personnel decisions and requirements, training requirements, minimum staff qualifications, and contract provisions established by the DMH. Moreover, regardless of which entity the residential care facility contracts with, the facility is state-funded.

With regard to the hiring process, although Louisiana Homes hires its own staff, the DMH established minimum qualifications for employment as a direct-care worker. The hiring decisions

are subject to approval by the Department of Social Services as the licensing agency and the contract agency—in this case CMH.

Moreover, the DMH established training requirements for the direct-care workers. The DMH requires 120 hours of training for direct-care staff who will be working in residential care facilities and annual training after the first year of employment. In this case, although CMH provided the training because it is the contract agency, the DMH participated in developing and maintaining the curricula for entry level and annual training. The DMH requires a staff person to satisfactorily complete the training program in order to continue employment. In addition, the training requirements of the DSS, as the licensing agency of all residential facilities, can be met through CMH training.

Each facility has its own budget. With regard to payment of direct-care workers, they are paid almost entirely, if not entirely, with state funds. The DMH establishes a maximum hourly rate in order to determine how much each facility will be given for personnel costs. If the provider opts to pay a worker more than the maximum hourly rate established by the DMH, another worker would, of necessity, be paid less. No transfer of funds to personnel from elsewhere in the budget is permitted, except for the amount allocated for administration. However, the amount allotted for administration is so low that the administrative costs typically use up "at least" the amount allocated for them. Moreover, the DMH does not permit funds to be transferred from the budget of one facility to another. The staffing levels of each provider is established by the contract agency—in this case CMH—on the basis of the needs of the recipients in the facility.

Little testimony was elicited, however, regarding the two remaining characteristics of being an employer—the power of dismissal and control over the employee's conduct. Testimony did show that where an allegation of abuse of a resident of a facility is made, the Office of Recipient Rights of the contract agency, i.e., either the DMH or CMH, investigates. If that office recommended that the employee involved be discharged, the facility's contract would be in jeopardy if the employee was not discharged from employment, even if the facility's investigation reached a different result. Furthermore, documents admitted as evidence show that some of the day-to-day activities of Louisiana Homes' direct-care workers are controlled by the DMH by virtue of its mandatory guidelines regarding meal patterns, meal preparations and service, sanitation and safety, staff garments and hair, and recipient rights.

The main witness at the hearing, Robert Stein, the executive vice president of MRCA, concluded that regardless of whether a facility contracts with the DMH or a county community health board, "the guidelines for contracting in terms of the budget and Schedule A [personnel budget] and personnel decisions and requirements and training requirements are the same."

Having reviewed the evidence in this case, the MERC concluded:

> In the instant case, the Department [DMH] has extensive control over the hiring requirements of Louisiana although it does not physically hire its employees. It also exerts extensive control, through its rules and regulations, over the day-to-day operations of the home, including the type of work that is done, how it is done, and the conditions under which it is done . . . . We are compelled to conclude, as did the NLRB's Regional

Director, that the Department's control over Louisiana's operations extends far beyond mere licensing requirements or the provision of funds through a grant arrangement. Since the Department and Louisiana share authority over Louisiana's employees and their terms and conditions of employment, we conclude that Louisiana and the Department are joint employers of these employees.

We believe that the MERC's finding that the DMH and Louisiana Homes are joint employers was supported by competent, material, and substantial evidence, given the hiring and training requirements the DMH imposes, the funding, and the amount of control over the activities of the direct-care workers. This case is a perfect example of an agency's choice between two reasonably different views.[1]

Affirmed.

[1] On appeal, the DMH cites a prior MERC decision that, it alleges, came to a different conclusion. Even if it did, the DMH fails to cite any authority supporting the proposition that one MERC panel, or for that matter this Court, must follow a prior MERC decision.