AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES v DEPARTMENT OF MENTAL
HEALTH

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA v
DEPARTMENT OF MENTAL HEALTH

Docket Nos. 158997, 159006, 159007, 163908, 163909, 163910, 163911, 172408, 172409, 172410. Submitted June 14, 1995, at Lansing. Decided January 12, 1996, at 9:00 A.M.

The American Federation of State, County and Municipal Employees and the United Automobile, Aerospace and Agricultural Implement Workers of America filed petitions in the Michigan Employment Relations Commission, seeking certification as collective bargaining agents of employees of several nonprofit corporations funded by the Department of Mental Health to provide group homes for developmentally disabled and mentally ill or impaired persons. The commission issued decisions in which it determined that the department was a joint employer of the employees in question. The commission also ordered an election at each of the corporations to determine the collective bargaining agent for the employees at each corporation. The department appealed in each case, claiming that the commission lacked jurisdiction because of preemption under the National Labor Relations Act, 29 USC 141 et seq. The Court of Appeals consolidated the appeals.

The Court of Appeals held:

Where, as here, the jurisdiction of the National Labor Relations Board pursuant to the National Labor Relations Act is arguable and an insufficient showing has been made that the board would decline to assert jurisdiction, the Michigan Employment Relations Commission must defer to the National Labor Relations Board, which examines whether the private employer meets the definition of "employer" under 29 USC 152(2) and whether the employer meets the applicable monetary jurisdictional standards in determining whether to take

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 17, 614.
See ALR Index under Labor and Employment.

jurisdiction over a private employer with close ties to a governmental entity exempt from the National Labor Relations Act. Decisions vacated.

LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — NATIONAL LABOR RELATIONS BOARD — JURISDICTION — NATIONAL LABOR RELATIONS ACT.

The jurisdiction of the Michigan Employment Relations Commission over a private employer with close ties to a governmental entity is preempted under the National Labor Relations Act where the jurisdiction of the National Labor Relations Board over that employer is arguable; the commission must defer to the board, which examines whether the employer meets the statutory definition of "employer" and whether the employer meets the applicable monetary jurisdictional standards in deciding whether to take jurisdiction (29 USC 141 *et seq.*).

*Webb, Hildebrandt & Paton, P.C.* (by *Alison L. Paton, L. Rodger Webb,* and *Ann Hildebrandt*), for American Federation of State County and Municipal Employees.

*Greenspon, Scheff & Washington, P.C.* (by *Donald B. Greenspon* and *George B. Washington*), for International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Clive D. Gemmill, Suzanne L. Wilhelm, Barbara A. Schmidt, Cheryl B. Lord,* and *Peter L. Trezise,* for Department of Mental Health.

Before: SMOLENSKI, P.J., and HOOD and M. J. CALLAHAN,* JJ.

SMOLENSKI, P.J. In these consolidated cases, respondent Department of Mental Health (DMH) appeals as of right decisions of the Michigan Employ-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment Relations Commission (MERC). We vacate those decisions on the ground that the MERC's jurisdiction is preempted by the National Labor Relations Act (NLRA), 29 USC 141 *et seq.*

Quality Living Systems; Central State Community Services; Community Normalization Home, Inc.; Innovative Housing Development; Independent Opportunities, Inc.; A.R.C. Corporation; Harrington House, Inc.; Alternative Services, Inc.; New House, Inc.; and River's Edge Residential Services, Inc., (hereinafter referred to as providers) are nonprofit corporations that provide group home[1] services for developmentally disabled and mentally ill or impaired persons. The providers have funding ties with the DMH either through direct contracts with the DMH or an agency of the DMH, or through contracts with various community mental health entities that in turn contract with the DMH.

Petitioners American Federation of State, County and Municipal Employees (AFSCME) and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) petitioned the MERC for certification as collective bargaining agents for certain group home employees. Petitioners alleged that the DMH and the providers were joint employers of these employees, which, if so found by the MERC, would mean that the DMH would be required to bargain in good faith with petitioners.[2] The MERC determined that the DMH and the providers were joint employers, further found that a question of representation existed, and directed that elections

---

[1] Paragon, a party in Docket No. 158997, is apparently one such group home.

[2] *Michigan Council 25, AFSCME v Louisiana Homes, Inc,* 192 Mich App 187, 188; 480 NW2d 280 (1991), vacated 441 Mich 883 (1992), reaffirmed on remand 203 Mich App 213, 221; 511 NW2d 696 (1994) (*Louisiana Homes I*).

be held to elect collective bargaining representatives. See generally the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*

The DMH argues that the providers are private employers and therefore the MERC did not have subject-matter jurisdiction to decide these cases because of preemption under the NLRA. A claim of federal preemption is a challenge to subject-matter jurisdiction that may be raised at any time. *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm,* 192 Mich App 19, 24; 480 NW2d 585 (1991).[3]

In *Michigan Council 25, AFSCME v Louisiana Homes, Inc (On Remand),* 203 Mich App 213; 511 NW2d 696 (1994), lv den 445 Mich 938 (1994), cert den sub nom *Michigan Dep't of Mental Health v Louisiana Homes, Inc,* — US —; 115 S Ct 724; 130 L Ed 2d 629 (1995) (*Louisiana Homes II*),[4] this Court recently decided this very issue adversely to the DMH in a case involving facts similar to the

[3] In Docket Nos. 158997, 159006, 159007, 163908, 163909, 163910, and 163911, the MERC declined to address this issue on the ground that it believed it was not the appropriate forum to do so.

In Docket Nos. 172408, 172409, and 172410, the MERC rejected the DMH's challenge to its subject-matter jurisdiction on the basis of this Court's opinion in *Michigan Council 25, AFSCME v Louisiana Homes, Inc (On Remand),* 203 Mich App 213; 511 NW2d 696 (1994), lv den 445 Mich 938 (1994), cert den sub nom *Michigan Dep't of Mental Health v Louisiana Homes, Inc,* — US —; 115 S Ct 724; 130 L Ed 2d 629 (1995) (*Louisiana Homes II*), which, as indicated in the text of this opinion, decided the preemption issue adversely to the DMH in a case involving facts similar to the facts of the instant cases. See also *AFSCME, AFL-CIO v Cencare Corp,* 210 Mich App 618; 534 NW2d 532 (1995); *Michigan Council 25, AFSCME v Dep't of Mental Health,* unpublished memorandum opinion of the Court of Appeals, issued March 10, 1995 (Docket Nos. 138263, 138264, 138265, 138266, and 138387); *Michigan Council 25, AFSCME v Saginaw Bay Human Services, Inc,* unpublished memorandum opinion of the Court of Appeals, issued March 10, 1995 (Docket No. 154966).

[4] See *supra* n 2.

facts of the instant cases.[5] However, after oral argument took place in these cases the National Labor Relations Board (NLRB) issued a decision that expressly overruled the reasoning of the precedent relied on by the *Louisiana Homes II* Court in deciding the preemption issue. See *Management Training Corp v Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 222*, 317 NLRB 1355 (1995). Thus, we believe reexamination of this issue is appropriate in light of the intervening change in federal law.

We begin with a summary of the generally applicable law as stated in *Louisiana Homes II:*

> Subject to limited exceptions, when an activity is "arguably" subject to the provisions of the NLRA, states must defer to the exclusive competence of the National Labor Relations Board. [*Int'l Longshoremen's Ass'n v Davis*, 476 US 380, 381, 394; 106 S Ct 1904; 90 L Ed 2d 389 (1986)]; *San Diego Building Trades Council v Garmon*, 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959). When a party asserts that state proceedings are preempted because the conduct at issue is within the purview of the NLRA, the claim represents a challenge to the subject-matter jurisdiction of the state court or tribunal; it is "a claim that the state court has no power to adjudicate the subject matter of the case." *Davis* at 393. Thus, when a claim of NLRA preemption is raised, *Davis* directs that "it must be considered and resolved by the state court." *Id.* [*Louisiana Homes II, supra* at 216-217.]

However, under § 152(2) of the NLRA, 29 USC 152(2), an "employer" subject to the provisions of the NLRA does not include a "State or political subdivision thereof." Moreover, under § 164(c) of

---

[5] See also *AFSCME, AFL-CIO v Cencare Corp, supra*; *Michigan Council 25, AFSCME v Dep't of Mental Health, supra*; *Michigan Council 25, AFSCME v Saginaw Bay Human Services, Inc, supra.*

the NLRA, 29 USC 164(c), the NLRB has discretion to refuse to exercise its jurisdiction over certain types of cases:

> (1) The Board, in its discretion, may, by rule of decision or by published rules . . . decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of it jurisdiction . . . .
>
> (2) Nothing in this Act . . . shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.

In *Nat'l Transportation Service, Inc v Truck Drivers & Helpers of America, Local Union 728,* 240 NLRB 565 (1979), the NLRB enunciated a test for determining whether the board would exercise jurisdiction over employers with close ties to an exempt entity:

> [I]n this and future cases involving a determination whether the Board should assert jurisdiction [over an employer with close ties to an exempt entity], we shall determine whether the employer itself meets the definition of "employer" in [29 USC 152(2)], and, if so, determine whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative.
>
> . . . Once it is determined that the employer can engage in meaningful collective bargaining with representatives of its employees, jurisdiction will be established. [*Id.*]

The NLRB explained that the control test provided a "more objective, precise, and definitive standard for determining discretionary jurisdictional issues" under § 164(c). *Id.* at 566.

In *CK Homes, Inc v AFSCME,* unpublished decision of the NLRB Seventh Region Director, decided February 14, 1986 (Case No. 7-RM-1275), the regional director held that the NLRB would not assert jurisdiction over an employer that was a nonprofit Michigan corporation provider of group homes for mentally disabled persons and that had contracted with the DMH to provide services to these persons. *Id.* at 2, 7. Applying *Nat'l Transportation,* the director found as follows:

> Thus, the Employer may be considered to be tantamount to an administrative arm of the government and not within the definition of [29 USC 152(2)]. In addition, the control possessed and exercised over the Employer's operations by the State of Michigan makes meaningful collective bargaining impossible. . . . Accordingly, as the Board does not have jurisdiction over the employer, I shall dismiss the petition. [*CK Homes, supra* at 6-7.]

In *Res-Care, Inc v Indiana Joint Bd, Retail, Wholesale & Dep't Store Union,* 280 NLRB 670 (1986), the NLRB reaffirmed the basic test set forth in *Nat'l Transportation* after clarifying the latter prong of that test:

> In applying [the *Nat'l Transportation*] test, however, we will examine closely not only the control over essential terms and conditions of employment retained by the employer, but also the scope and degree of control exercised by the exempt entity over the employer's labor relations, to determine whether the employer in issue is capable of engaging in meaningful collective bargaining. [*Res-Care, supra* at 672.]

The board made clear that "the setting of wage and benefit standards by the exempt entity is the type of control over essential terms of employment that precludes meaningful bargaining." *Id.* at 673. After careful review, the board held that it would not assert jurisdiction over Res-Care, a for-profit corporation operating residential job corps centers under a contract with the United States Department of Labor (DOL):

> Res-Care and our dissenting colleague both contend that we should base our determination on [29 USC 152(2)]. We do not agree.[6] As the Board stated in *National Transportation,* our inquiry is twofold, i.e., "whether the employer itself meets the definition of 'employer' in [29 USC 152(2)] and, if so . . . whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative." *Id.* at 565. It is clear, and no party contends otherwise, that Res-Care itself is not a Federal Government agency, and is thus not exempt from our jurisdiction under [29 USC 152(2)]. It is also clear that Res-Care employs "employees" as that term is defined in [29 USC 152(3)]. Our only inquiry, therefore, is whether, in exercising our discretion, we should decline to assert jurisdiction because of the extent to which DOL, an entity exempt from our jurisdiction, controls the employment conditions of Res-Care's employees. We answer that question today in the affirmative on the ground that the policies of the Act would not be effectuated by our assertion of Jurisdiction in this case. [*Id.* at 670, n 1.]

---

[6] Although contending that the control test involved a question of the board's statutory jurisdiction under 29 USC 152 and not a question involving the board's discretionary jurisdiction, the dissenting opinion in *Res-Care* noted that confusion in this area existed with some cases describing the control test as a standard for determining discretionary jurisdictional issues and other cases viewing the control test as an essentially statutory standard. See *Res-Care, supra* (Stephens, board member, dissenting).

See also *Long Stretch Youth Home, Inc v Maryland State Employees Council 92, AFSCME, AFL-CIO,* 280 NLRB 678 (1986).

In *Residential Systems, Inc v Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America,* unpublished decision of the NLRB Seventh Region Director, decided April 7, 1988 (Case No. 7-RC-18529), the employer was a nonprofit corporation providing group home care in Michigan for developmentally disabled persons. *Id.* at 2. The employer contracted with a subdivision of the DMH to provide services to the group home residents. *Id.* at 2-3.

Expressly relying on *Nat'l Transportation* and *Res-Care,* the regional director held that the NLRB would not assert jurisdiction over the employer-provider. *Id.* at 5-6. In so deciding, the director did not address the first prong of the test, i.e., whether the provider met the statutory definition of "employer" found in 29 USC 152(2), but rather found that meaningful bargaining by the employer-provider was not possible because of the extensive control over its labor relations by the State of Michigan. *Id.*

As indicated previously, in *Louisiana Homes II* the DMH raised a preemption argument in a case involving facts similar to the facts of the instant cases, i.e., a union petitioned the MERC to represent the employees of a group home provider with contractual ties to the DMH. *Id.* at 216.[7] In analyzing the preemption issue, this Court noted that the parties did not dispute that "the DMH, because it is a department created directly by the state, is an exempt political subdivision." *Id.* at 217. However, this Court determined that the NLRB's jurisdiction over the provider was arguable:

[7] See also *Louisiana Homes I, supra* at 188-189.

In the context of the "political subdivision" exemption, the NLRB has recognized that an otherwise statutory employer may also be exempt from the NLRB's jurisdiction if an exempt governmental entity exerts a substantial degree of control over it.[8] *Human Development Ass'n v NLRB*, 290 US App DC 339, 342-343; 937 F2d 657 (1991), cert den [503 US 950]; 112 S Ct 1512; 117 L Ed 2d 649 (1992); *NLRB v Parents & Friends of the Specialized Living Center*, 879 F2d 1442, 1449 (CA 7, 1989); *Res-Care [supra]*. See also *Long Stretch [supra]*. In deciding whether an employer is exempt from the NLRB's jurisdiction because of its ties to an exempt governmental entity, the NLRB examines "not only the control over essential terms and conditions of employment retained by the employer, but also the scope and control exercised by the exempt entity over the employer's labor relations, to determine whether the employer in issue is capable of engaging in meaningful collective bargaining." *Res-Care* at 672.

* * *

The record in this case indicates that, while the DMH exercises significant control over various aspects of Louisiana Homes' labor relations, Louisiana Homes continues to retain some control over essential terms and conditions of employment. Whether the control retained by Louisiana Homes over employment matters rises to a level such that the NLRB could legally decide to assert jurisdiction over it notwithstanding the control over labor relations exercised by the DMH is, in our view, at least arguable. [*Louisiana Homes II, supra* at 217-219.]

However, this Court stated that even if an "arguable" case for preemption existed, a state court or tribunal could nevertheless assert its jurisdiction if it could be shown that the NLRB has declined or would decline to assert jurisdiction pursuant to 29 USC 164(c):

---

8 See n 5.

In order to prevent fruitless submissions to the NLRB, it is not necessary under § 164(c) for a party to first submit a given case to the NLRB for a determination of the jurisdictional question; rather, a party need only show on the basis of "rule of decision or by published rules" that the NLRB has or would have declined jurisdiction. 29 USC 164(c)(1); *Russell* [v *Electrical Workers Local 569,* 64 Cal 2d 22, 25; 48 Cal Rptr 702; 409 P2d 926 (1966)]. In ruling on such a claim, a state court would not be determining "the operative provisions or the coverage of the [NLRA], " nor substituting its own view "for that of the Board." *Id.* at 28. Rather, it would merely be "apply[ing] standards which the Board has [already] laid down." *Id.* [*Louisiana Homes II, supra* at 220.]

This Court then held that the unpublished NLRB decisions of *Residential Systems* and *CK Homes* constituted a sufficient showing under 29 USC 164(c)(1) that the NLRB had declined or would decline to assert jurisdiction, and that the MERC was therefore free to assert its jurisdiction. *Louisiana Homes II, supra* at 221. This Court disagreed with the DMH's contention that more recent authority rendered the decisions in *Residential Systems* and *CK Homes* suspect:

Although, as the DMH points out, *CK Homes* was decided before the decisions in *Res-Care* and *Long Stretch Youth Home* were issued, *Residential Systems* was decided after each of those cases and, as the MERC noted, the same result was reached in *Residential Systems* as had been reached in *CK Homes* after expressly applying the standards enunciated in *Res-Care.* Nor do we believe that the propriety of *CK Homes* and *Residential Systems* is affected by the decisions in *Parents & 'Friends* and *Human Development Ass'n, supra.* Although each of those cases involves situations where the NLRB elected to assert jurisdiction over an employer

with close ties to an exempt governmental entity, the decisions were reached applying the same *Res-Care* standards that were applied in *Residential Systems*. [*Louisiana Homes II, supra* at 221, n 3.]

However, in *Management Training* the NLRB overruled the *Res-Care* test:

> In *Res-Care*, the Board held that, in deciding whether it would assert jurisdiction over an employer with close ties to an exempt government entity, it would examine the control over essential terms and conditions of employment retained by both the employer and the exempt entity to determine whether the employer in issue is capable of engaging in meaningful collective bargaining. 280 NLRB at 672. After careful consideration of *Res-Care* and its progeny and for the reasons set forth below, we have decided that the test set forth in *Res-Care* is unworkable and unrealistic. Rather, we think that whether there are sufficient employment matters over which unions and employers can bargain is a question better left to the parties at the bargaining table and, ultimately, to the employee voters in each case.
>
> * * *
>
> [I]n determining whether the Board should assert jurisdiction, the Board will only consider whether the employer meets the definition of "employer" under [29 USC 152(2)] of the Act, and whether such employer meets the applicable monetary jurisdictional standards. [*Management Training, supra* at 1335, 1358.]

The NLRB's rationale for overruling the *Res-Care* test was that the test had been applied to employers with close ties to exempt entities in a varied and confusing manner. *Management Training, supra* at 1357. The NLRB also stated that it believed both that "the emphasis in *Res-Care* on control of economic terms and conditions was an over-simpli-

fication of the bargaining process," and that the *Res-Care* test invited lengthy litigation whereas the new test would reduce the potential for litigation. *Management Training, supra* at 1357, 1358.

In applying the new standard to the facts of *Management Training,* the NLRB held that it would exercise its jurisdiction over the employer, which managed a job corps center pursuant to a contract with the DOL. *Id.* at 1355. In so holding, the NLRB noted that there was no evidence or allegation that the employer was an exempt "State or political subdivision thereof" pursuant to 29 USC 152(2). *Id.* The NLRB also indicated that the employer had received "at least $500,000 in gross revenue during the past 12 months and received at least $50,000 in goods or services directly from outside the State of Utah as well as shipped goods or furnished services in the same amount directly outside the State. Accordingly, we find that the Employer is engaged in commerce within the meaning of the Act." *Id.* at 1359.

Applying *Management Training* to the instant cases, we note that no allegation is raised that the providers are an exempt "State or political subdivision thereof" pursuant to 29 USC 152(2). Furthermore, because it was not addressed below, the records contain no evidence concerning whether the providers meet "the applicable monetary jurisdictional standards." *Management Training, supra.*

AFSCME argues that the MERC could exercise jurisdiction over the group home employees because the DMH is an exempt political subdivision under the NLRA and the MERC determined that the DMH was a joint employer of these employees, thus making them public employees within the PERA. In *Louisiana Homes II,* this Court rejected a similar argument:

We disagree with the petitioner's contention that resolution of the preemption issue is controlled by the MERC's finding that the DMH and Louisiana Homes are joint employers. *Davis* makes clear that it is not within the competence of a state court to adjudicate whether a particular case falls within the purview of the NLRA. *Davis* at 390, 397. Quoting from *Garmon*, the *Davis* Court stated, "It is essential to the administration of the [NLRA] that these determinations be left in the first instance to the [NLRB]." *Id.* at 390. According to *Davis*, when faced with a preemption claim, the court must first "decide whether there is an arguable case for pre-emption; if there is, it must defer to the Board, and only if the Board decides that the conduct is not protected or prohibited may the court entertain the litigation." *Id.* at 397. Thus, in this case, resolution of the preemption issue depends not on whether the DMH and Louisiana Homes are joint employers under state law as the MERC decided but on whether this case is "arguably" one where the NLRB could legally decide to assert jurisdiction over Louisiana Homes. Cf. *Davis* at 395. [*Louisiana Homes II, supra* at 218-219.]

Moreover, in *Management Training*, the NLRB stated:

> [W]e will not employ a joint employer analysis to determine jurisdiction. Whether the private employer and the exempt entity are joint employers is irrelevant. The fact that we have no jurisdiction over governmental entities and thus cannot compel them to sit at the bargaining table does not destroy the ability of private employers to engage in effective bargaining over terms and conditions of employment within their control. [*Id.* at 1358, n 16.]

Thus, we conclude that the labor activity in the instant cases is at least "arguably" subject to the provisions of the NLRA. Although this conclusion is based on the test enunciated in *Management*

*Training,* this conclusion is consistent with the conclusion reached in *Louisiana Homes II.*

However, in *Louisiana Homes II* this Court further held that the MERC was nevertheless free to assert its jurisdiction on the ground that the unpublished NLRB decisions of *Residential Systems* and *CK Homes* constituted a sufficient showing that the NLRB would refuse to assert its jurisdiction. *Louisiana Homes II, supra* at 221. This Court emphasized that this result stemmed "not from our own interpretation of the NLRA, but from our application of the NLRB's own decisions under like circumstances." *Id.*

In the instant cases, unlike in *Louisiana Homes II,* we can no longer say that *Residential Systems* and *CK Homes* provide a sufficient showing that the NLRB would decline to assert its jurisdiction where the *Res-Care/National Transportation* "control" test utilized in those cases was expressly overruled by the NLRB in *Management Training.* Accordingly, where the NLRB's jurisdiction is arguable in the instant cases and an insufficient showing has been made that the NLRB would decline to assert its jurisdiction, we hold that the MERC must defer to the NLRB.

In so holding, we follow the rule of law stated in *Louisiana Homes II:*

> In order to prevent fruitless submissions to the NLRB, it is not necessary under § 164(c) for a party to first submit a given case to the NLRB for a determination of the jurisdictional question; rather a party need only show on the basis of "rule of decision or by published rules" that the NLRB has or would have declined jurisdiction. 29 USC 164(c) (1); *Russell, supra* at 25. In ruling on such a claim, a state court would not be determining "the operative provisions or the coverage of the [NLRA], " nor substituting its own view "for that of the Board."

*Id.* at 28. Rather, it would merely be "apply[ing] standards which the Board has [already] laid down." *Id.* [*Louisiana Homes II, supra* at 220.]

Accordingly, as in *Louisiana Homes II,* "our resolution of this issue stems not from our own interpretation of the NLRA, but from our application of the NLRB's own decisions . . . ." *Id.* at 221. Thus, in light of the intervening change in federal law, we do not believe we are constrained by Administrative Order No. 1994-4 to follow the result reached in *Louisiana Homes II.*

Therefore, we vacate the MERC decisions in the instant cases on the ground of preemption. In light of this disposition, we do not reach the remaining issues raised by the DMH.

Vacated.