RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0377P (6th Cir.)
File Name: 02a0377p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHIGAN COMMUNITY
SERVICES, INC., et al.,
             *Petitioners/*
*Cross-Respondents (00-2192),*

AMERICAN FEDERATION OF
STATE, COUNTY &
MUNICIPAL EMPLOYEES
(AFSCME), AFL-CIO,
             *Petitioner/*
 *Cross-Respondent (00-2451),*

             *v.*

NATIONAL LABOR RELATIONS
BOARD,
             *Respondent/*
 *Cross-Petitioner (00-2440),*

AMERICAN FEDERATION OF
STATE, COUNTY &
MUNICIPAL EMPLOYEES
(AFSCME), AFL-CIO;
INTERNATIONAL UNION,
UNITED AUTOMOBILE,
AEROSPACE AND

Nos. 00-2192/
2440/2451

1

AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,
AFL-CIO; SUMMER'S LIVING
SYSTEMS, INC., et al.,

            *Intervenors.*

On Petitions for Review and Cross-Application for
Enforcement of an Order of the
National Labor Relations Board.
Nos. 7-CA-38546(2), et al.

Argued: July 31, 2002

Decided and Filed: October 30, 2002

Before: SILER, COLE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gregory J. Bator, BATOR & BERLIN, Birmingham, Michigan, for Petitioners and Summer's Living Systems, Inc. Richard A. Cohen, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Respondent. Margaret A. McCann, Washington, D.C., for American Federation of State, County & Municipal Employees, (AFSCME), AFL-CIO. **ON BRIEF:** Gregory J. Bator, BATOR & BERLIN, Birmingham, Alabama, for Petitioners and Summer's Living Systems, Inc. Daniel A. Gwinn, BATOR & BERLIN, Birmingham, Michigan, Rodger Webb, Detroit, Michigan, for Petitioners. Richard A. Cohen, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., Aileen A. Armstrong, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent.

implemented by a centralized agency. Specifically, the Court in *New York Telephone Co.* stated,

> The overriding interest in a uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress not only demands that the NLRB's primary jurisdiction be protected, it also forecloses overlapping state enforcement of the prohibitions in § 8 of the Act [29 U.S.C. § 158] . . . as well as state interference with the exercise of rights protected by § 7 of the Act [29 U.S.C. § 157].

*Id.* at 528 (citations and footnotes omitted). *See also NLRB v. Waterman S.S. Corp.*, 309 U.S. 206, 226 (1940) ("The control of the election proceedings, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone."). Further, we note that the extension of comity to the MERC-conducted elections involving SLS would appear to be inconsistent with the Board's own policy. *See Doctor's Osteopathic Hosp.*, 242 NLRB 447, 449 (1979), *aff'd* 624 F.2d 1089 (3d Cir. 1980) (noting that "it is only where the state agency's procedure is clearly repugnant to the Act that we will refuse comity"). Accordingly, we deny AFSCME's petition for review.

**CONCLUSION**

For the foregoing reasons, we **DENY** the petitions for review by MCS in Case No. 00-2192 and AFSCME in Case No. 00-2451, and **ENFORCE** the Board's order in Case No. 00-2440 finding that it is supported by substantial evidence on the record.

"Want of jurisdiction of the subject matter cannot be waived; that jurisdiction of the subject matter cannot be supplied by the consent of the parties; and that objection to lack of such jurisdiction may be interposed or noticed at any stage of the action." 1A Barron and Holtzoff, Fed. Practice and Procedure, § 370b (Wright ed., 1960).

353 F.2d 366, 369 (6th Cir. 1965). Thus, the Board was free to exercise its discretion and assume jurisdiction at any time.

In this case, the Board, after issuing *Management Training,* had exclusive jurisdiction to direct or supervise the elections. *See Sears, Roebuck & Co. v. Carpenter's Dist. Council (San Diego)*, 436 U.S. 180, 202 (1978) ("The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board.") As Intervenor SLS rightly argues, quoting from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 246 (1959), state jurisdiction is displaced if conduct is "arguably within the compass of § 7 or § 8 of the Act." Given that the elections were "arguably within the compass of § 7 or § 8 of the Act," the elections conducted by MERC should be void. *See Mass. Labor Relations Comm'n v. Blue Hill Spring Water Co.*, 414 N.E.2d 351 (Mass. Ct. App. 1980) (recognizing that proceedings in the Massachusetts Labor Relations Committee would be void if the Board had asserted jurisdiction of an unfair labor practice complaint).

Because MERC did not have jurisdiction to conduct the elections involving SLS after the issuance of *Management Training*, the Board properly refused to extend comity to these MERC-conducted elections. As pointed out by SLS, extending comity in this case would directly violate the intent of Congress to vest exclusive jurisdiction with the Board and subvert the goal announced in *New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519 (1979) of promoting a unified nationwide scheme of labor law

Margaret A. McCann, Washington, D.C., for American Federation of State, County & Municipal Employees, (AFSCME), AFL-CIO. Catherine J. Trafton, ASSOCIATE GENERAL COUNSEL, INTERNATIONAL UNION, UAW, Detroit, Michigan, George B. Washington, SCHEFF & WASHINGTON, Detroit, Michigan, Lawrence R. Webb, Detroit, Michigan, Daniel A. Gwinn, BATOR & BERLIN, Birmingham, Michigan, for Intervenors.

_____

## OPINION

_____

CLAY, Circuit Judge. Michigan Community Services, Inc. and twenty-eight other non-profit corporations (collectively "MCS"), which are licensed by the State of Michigan to provide residential care for developmentally disabled adults in a residential setting, appeal in Case No. 00-2192 from the final decision and order entered by the National Labor Relations Board ("the NLRB" or "the Board") in *Summer's Living Systems, Inc.,* 2000 WL 1460041 (NLRB 2000) (unpublished) in which the NLRB declined to set aside union representation elections and held that MCS engaged in unfair labor practices under §§ 7 and 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 157, 158(a)(1) and (5) ("the Act") by refusing to bargain collectively with the American Federation of State, County & Municipal Employees, AFL-CIO ("AFSCME"), and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW"), (collectively, "the Unions"), after the unions won the elections. In Case No. 00-2440, the NLRB has cross-petitioned for enforcement of the order; the Unions have intervened in support of the NLRB's cross-petition. In Case No. 00-2451, AFSCME seeks review of the NLRB's decision and order in *Summer's Living Systems* dismissing unfair labor practice allegations against Summer's Living Systems, Inc. and eight other employers (collectively "SLS") that own

residential care facilities. SLS has intervened in opposition to AFSCME's petition.

In *Summer's Living Systems,* the Board issued a decision and order affirming the decision made by the administrative law judge ("ALJ") to extend comity to the union representation elections conducted by the Michigan Employee Relations Commission ("MERC") in thirty residential care facilities owned by MCS that took place before *Management Training Corp.*, 317 NLRB 1355 (1995) was decided, but not to extend comity to the MERC-conducted elections in the residential care facilities owned by SLS that took place after *Management Training* was decided on the ground that MERC lacked jurisdiction to conduct those union representation elections. In *Management Training,* the Board, overruling the jurisdictional test set forth in *Res-Care, Inc.*, 280 NLRB 670 (1986), decided that it had jurisdiction over an employer with close ties to an exempt governmental entity, as defined under 29 U.S.C. § 152(2). Accordingly, the Board upheld the unfair labor practice complaints filed against MCS, but dismissed those filed against SLS. For the reasons set forth below, we **DENY** the petitions for review by MCS in Case No. 00-2192 and by AFSCME in Case No. 00-2451, and **ENFORCE** the Board's order in Case No. 00-2440.

## BACKGROUND

The present case concerns a dispute between a group of Michigan non-profit corporations operating group homes providing residential care and services to individuals with disabilities (collectively "the Employers") and the Unions representing their employees regarding the employees' rights to choose union representation under § 7 of the Act. The State of Michigan Department of Mental Health ("MDMH") funds the Employers' operations through annual contracts that establish defined limits upon wages and benefits that the Employers may pay. In 1985, the Unions began organizing efforts at the Employers' residential care facilities, with AFSCME filing several election petitions with the Board's

concerning assertion of that oversight." *Pikeville*, 109 F.3d at 1152 (internal citations and quotation marks omitted).

In determining whether the Board had jurisdiction, this Court in *Pikeville* set forth the following standard: "Under a *Management Training Corp.* analysis, the jurisdiction of the NLRB over [an employer] is established simply by the minimal showing that the [employer] both "meets the definition of 'employer' under Section 2(2) of the Act," and "meets the applicable monetary jurisdictional standards." *Id.* Under this test, the Board properly had jurisdiction over SLS.

In this regard, there is no merit to AFSCME's claim that SLS waived the jurisdictional issue by failing to raise it before the MERC elections were held or before the Board in *Summer's Living Systems, Inc.* As the Intervenors SLS point out, their failure to contest the jurisdiction of the MERC at the time of the elections does not prevent the Board from concluding that the MERC lacked jurisdiction to conduct the elections after *Management Training*. As this Court noted in *NLRB v. Ferraro's Bakery, Inc.*:

> The Board concedes that the question of its statutory jurisdiction may be raised at any time despite failure to raise this issue before the Board in a timely fashion. Failure to file exceptions does not confer jurisdiction on the Board if the order is beyond the scope of its statutory authority. As said in *N.L.R.B. v. Cheney California Lumber Company*, 327 U.S. 385, 388, 66 S. Ct. 533, 554, 90 L.Ed. 739:
>
> > "Since the court is ordering entry of a decree, it need not render such a decree if the Board has patently traveled outside the orbit of its authority so that there is, legally speaking, no order to enforce."
>
> It is elementary that:

1995); *NLRB v. Winco Petroleum Co.*, 668 F.2d 973, 982 (8th Cir. 1982). As stated in *Fall River*, the appropriate inquiry is whether any changes have occurred such that "if [the employees'] legitimate expectations in continued representation by their union are thwarted, their dissatisfaction may lead to labor unrest." *Fall River*, 482 U.S. at 43-44. Further, as the Board points out, to allow new elections in this case would permit MCS "to exploit the heightened insecurities among employees" to the detriment of the Act's fundamental policy of favoring "industrial peace." In any event, it is well recognized that the employees have the statutorily-protected right of relieving themselves of union representation if they so desire. *See Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 790 (1996)(observing that the union was "subject to a decertification petition from the workers if they want to file one"); *Franks Bros. Co. v. NLRB*, 321 U.S. 702, 704-06 (1944). Thus, if the employees are not well-served by union representation, they can pursue decertification petitions.

Accordingly, we find that the Board did not err in extending comity to the MERC-conducted elections held before the issuance of *Management Training*. We thus deny MCS' petition for review.

## Case No. 00-2451: AFSCME's Petition

On the other hand, contrary to AFSCME's claim, the Board did not err in declining to extend comity to the MERC-conducted elections after *Management Training* was decided on the basis that MERC lacked jurisdiction to hold these elections. In reviewing this claim, we note that the NLRB "has discretion whether to exercise jurisdiction." *Pikeville*, 109 F.3d at 1152 (quoting *Crestline Memorial Hosp. Ass'n, Inc. v. NLRB*, 668 F.2d 243, 244 (6th Cir.1982)). "Thus, absent a showing that [the Board] acted unfairly and caused substantial prejudice to the affected employer, a reviewing court should not disturb the NLRB's discretionary decision

regional office in Detroit, Michigan, seeking to represent the employees of the Employers operating under contracts with MDMH. In *CK Homes, Inc. v. AFSCME*, an unpublished decision of the NLRB Seventh Region Director, decided February 14, 1986 (Case No. 7-RM-1275) and *Residential Systems v. UAW*, an unpublished decision of the NLRB Seventh Region Director, decided April 7, 1988 (Case No. No. 7-RC-18529), the Board, relying primarily upon *Res-Care Inc.*, 280 NLRB 670 (1980), dismissed AFSCME's petitions, citing lack of subject-matter jurisdiction under the Act on the basis that the State of Michigan was an exempt governmental entity.

Thereafter, on January 28, 1988, AFSCME filed petitions with MERC seeking to represent the employees of the Employers' separate units, naming MDMH and the group home providers as joint employers. MDMH opposed the petitions naming it as a joint employer, claiming that MERC's jurisdiction over each private employer was preempted as a matter of federal labor policy. After finding that the named employers were joint employers, MERC asserted jurisdiction over MDMH under the Michigan Public Employment Relations Act ("PERA"), Mich. Comp. Laws Ann. §§ 423.201–423.216, and over the group home providers under the Michigan Labor Mediation Act ("MLMA"), Mich. Comp. Laws Ann. §§ 423.1–423.30. In asserting jurisdiction, MERC relied upon the Board's refusal to assert jurisdiction over the group home providers under the Act and the decision of the Michigan Civil Service Commission not to classify the employees of the group homes as state civil service employees. *See AFSCME v. La. Homes, Inc./Mich. Dep't of Mental Health*, MERC Case No. R88 C-112, 1989 MERC Lab Op 51, 1990 MERC Lab Op 491, *aff'd, AFSCME v. La. Homes*, 480 N.W.2d 280 (Mich. Ct. App. 1991), *appeal denied*, 487 N.W.2d 410 (Mich. 1992), *vacated*, 503 N.W.2d 442 (Mich. 1992), *reaff'd on remand*, 511 N.W.2d 696 (Mich. Ct. App. 1994), *appeal denied*, 521 N.W.2d 607 (Mich. 1994), *cert. denied sub. nom., Mich.*

*Dep't of Mental Health v. Louisiana Homes, Inc.*, 513 U.S. 1077 (1995) ("*Louisiana Homes*").

MERC then directed and conducted elections involving the joint employers, as authorized by PERA. After elections were conducted on April 20, 1989, the ballots were impounded, but eventually counted by MERC on June 29, 1990. The Unions won each election.[1] As a consequence, MERC certified the bargaining representatives, giving unit employees bargaining rights with respect to MDMH and their private employers, as joint employers. MDMH, however, refused to honor MERC's certifications and challenged them in state court, seeking judicial review of the MERC's assertion of jurisdiction by claiming that it was not a joint employer of the subject-unit employees and contending that the Act preempted state law. MERC's assertion of jurisdiction was eventually upheld on appellate review in the *Louisiana Homes* litigation. Throughout the appellate proceedings, the Employers took the same position as AFSCME, that they and MDMH were joint employers subject to MERC's jurisdiction which was not preempted by the Act. During this time, however, no bargaining in the certified units took place because the Employers were unwilling to participate in bargaining if MDMH was also not a participant.

After the United States Supreme Court denied MDMH's petition for a writ of certiorari in the *Louisiana Homes* case on January 9, 1995, bargaining eventually commenced, but did not last long. In mid-1995, the Board announced a change in policy in *Management Training*, overruling the test stated in *Res-Care* and declaring that it had jurisdiction over private employers under contract with exempt state agencies. In light of the Board's decision in *Management Training*, MDMH petitioned the Michigan Court of Appeals to reconsider and reverse its previous decision finding that

---

[1]AFSCME won all the elections, except for one that was won by the UAW.

Here, the Board reasonably rejected as speculative the claim of MCS that the contracts between MCS and MDMH legally preclude MCS and their employees from bargaining about improved wages, benefits, staffing levels and the like. Even though the contracts with MDMH set the wages, benefits and staffing levels for which MCS will be reimbursed during the contracts' annual term, these contracts do not prevent the employers from agreeing to increase such terms during collective bargaining with their employees. Thus, there is no credible evidence that MCS' employees would have rejected union representation had they known that MDMH would not be present at the bargaining table.

As the Board perceptively points out, the only real change in the employees' situation resulting from the Board's recognition of the MERC-conducted elections held before the issuance of *Management Training* is that MCS' employees are now authorized to strike. As the Board notes, the employees were prohibited from striking against an exempt governmental entity under PERA. However, under the Board's jurisdiction, the employees are permitted to strike, thus strengthening their ability to enforce their bargaining demands. Given that the employees were given authorization to strike, the Board correctly reasons that it is unlikely that the changed circumstance occasioned by the Board's jurisdiction of this matter would cause the employees to abandon union representation. Because it is not very likely that the absence of the MDMH at the bargaining table would have affected employee views and attitudes about union representation, there was no support for nullifying the elections upon the basis of a changed circumstance.

Consequently, MCS cannot repudiate its bargaining obligations. As the Board makes clear, the situation in this case is similar to one in a successorship context in which new owners cannot repudiate an existing bargaining obligation on the ground of changed circumstances. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38, 47 (1987); *ARMCO, Inc. v. NLRB*, 832 F.2d 358, 362-63 (6th Cir.

that MERC conducted the elections, it was the case that MDMH was considered to be a joint employer. However, as Intervenor AFSCME states, "everyone knew, or should have known, that the status of the state as employer under PERA was subject to vigorous litigation." AFSCME Br. at 22. Thus, contrary to MCS' unsupported assertion, there is no indication that the MERC-conducted elections at the time "denied employees a free and fair choice based upon the truth;" nor is there any basis to believe that "the complexity of the interrelationships between the State of Michigan Department of Mental Health, the state judiciary, the MERC, the Board, and the parties to the election robbed employees and Employers of a clear understanding as to the impact of the union elections." MCS Br. at 18. Because there was no misrepresentation concerning MDMH's status as a joint employer, there is no basis to set aside the elections.

Nevertheless, MCS' real complaint is whether the changed circumstance of MDMH not being at the bargaining table called into question whether the election results reflected the desires of their employees to be represented by the Unions. Thus, MCS claims:

Had employees known in the present case that the State of Michigan would ultimately not participate in collective bargaining, the result of the election could easily have been different. Without the misrepresentation regarding the state's involvement, employees could have weighed the extraction of union dues out of modest earnings against the improbability of the union securing higher wages or different working conditions.

MCS Br. at 22-23. According to MCS, the elections should be invalidated because "[i]t is doubtful that employees would have voted for a decrease in their wages to finance a union dues deduction, in light of the improbability of wage increases at the bargaining table." MCS Br. at 27.

MERC's jurisdiction was not preempted as a matter of federal labor policy. Thereafter, on January 26, 1996, the Michigan Court of Appeals, in reliance upon *Management Training*, vacated MERC's decisions requiring the Employers and MDMH to bargain with the Unions in all the adult residential care cases before MERC, concluding that MERC's jurisdiction was preempted as a matter of federal labor policy. *AFSCME v. Mental Health Dep't.*, 545 N.W.2d 363 (Mich. Ct. App. 1996).[2] Thus, the Michigan Court of Appeals held that the adult residential care providers that contracted with MDMH were properly under the jurisdiction of the Board. As a result, MDMH and the Employers were relieved of any duty to bargain under state law. Thereafter, the Michigan Court of Appeals, in an order entered on March 14, 1996, denied AFSCME's motion for rehearing, but granted its motion for a stay.

In the meantime, after the Board's decision in *Management Training*, but before the Michigan Court of Appeals ruled on the federal preemption issue in *AFSCME v. Mental Health Dep't*, AFSCME proceeded with elections that previously had been directed by MERC, though not yet conducted. AFSCME won those union representation elections involving the employees of units of Summer's Living Systems, Inc. and eight other employers ("SLS"). However, following the Michigan Court of Appeals' decision in *AFSCME v. Mental Health Dep't* vacating MERC's certifications on preemption grounds, the State of Michigan refused to bargain with the Unions. When the Unions requested that the Employers continue to bargain under the Act without MDMH's participation, the Employers refused, claiming that the changed circumstance—the absence of MDMH from the

---

[2] After the decision in *AFSCME v. Mental Health Dep't*, 545 N.W.2d 363 (Mich. Ct. App. 1996), the Michigan legislature amended PERA at Mich. Comp. Laws Ann. § 423.201(e) to define employees who worked for a private entity under contract with the State as private sector employees, and therefore not protected by PERA.

bargaining process—undermined the efficacy of MERC's elections as a basis for requiring the Employers to bargain as a matter of federal labor policy. Thus, all collective bargaining came to a halt. The Unions contacted the Board on March 18, 1996, formally demanding bargaining by the Employers.

Thereafter, the Unions filed unfair labor practice charges with the Board against thirty-eight of the group home providers contracted by MDMH, alleging refusal to bargain under the Act as the sole employers of employees in the subject units.[3] Based upon the charges filed by the Unions, the Board issued a series of consolidated unfair labor practice complaints alleging that the refusal to bargain violated § 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5). After hearings in Detroit, Michigan on January 29 and 30, 1997, the administrative law judge ("ALJ") issued a decision in which he found it appropriate to extend comity to the elections that MERC had conducted when MERC properly had jurisdiction over the private employers.[4] Thus, the ALJ found that MCS violated § 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5) by refusing to recognize and bargain with the Unions.[5] In so holding, the ALJ rejected the Employers' argument that the absence of MDMH from the bargaining table represented a changed circumstance that prevented the Board from extending comity to the MERC elections as a matter of federal labor policy. However, with

---

[3] In this case, there are thirty-eight group home providers and forty units at issue. Two providers, Alternative Services and Carson's AFC, held elections both before and after July 28, 1995, thus accounting for the difference between the number of providers and subject units.

[4] The ALJ's decision is attached to *Summer's Living Systems. See* 2000 WL 1460041, at *6-39.

[5] Except for one instance, all the unfair labor practices involved the AFSCME.

1979); *accord Lincoln Park Zoological Soc'y v. NLRB*, 116 F.3d 216, 219-20 (7th Cir. 1997) (extending comity to voluntary recognition of the union where, pursuant to the state public employee relations act, the employer has the initial chance to refuse to recognize a union and the employees had a right to decertify the union but failed to exercise it). Thus, based upon the criteria set forth in *Standby One Associates*, the Board properly extended comity to the MERC-conducted elections.

There is no merit to MCS' claim that the MERC-conducted elections should be set aside based upon the alleged misrepresentation that MDMH was a joint employer in these proceedings. According to MCS, the alleged misrepresentation concerning MDMH's role affected the free and fair conduct of the elections. Specifically, MCS contends that the Board applied the wrong legal standard in evaluating the facts. In support of their claim of misrepresentation, MCS relies upon the five-factor test announced in *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1155 (6th Cir. 1996). As this Court stated in *NLRB v. Gormac Custom Mfg., Inc.*, 190 F.3d 742 (6th Cir. 1999): "These factors include: (1) the timing of the misrepresentation; (2) whether the employer was aware of the situation and had an opportunity to respond; (3) the extent of the misrepresentation; (4) whether the source of the misrepresentation was identified; and (5) whether there is evidence that employees 'actually were affected' by the misrepresentation." *Id.* at 747 (citing *Mitchellace*, 90 F.3d at 1155). In *Gormac*, this Court added that "another factor that plays a part in our analysis is the closeness of the election." 190 F.3d at 747 (citing *NLRB v. Hub Plastics*, 52 F.3d 608, 613 (6th Cir. 1995)).

What is wrong with this line of attack is that there was no misrepresentation that supports setting aside the elections. Specifically, there was no evidence in the record that MCS' employees were misled by the status of MDMH at the time of the elections, even though MCS had every opportunity to present such evidence during these proceedings. At the time

In this case, the Board, adopting the ALJ's findings, properly extended comity to the MERC elections conducted before the issuance of *Management Training*. Specifically, the Board, citing *Standby One Associates*, 274 NLRB 952 (1985), found that (1) the state-conducted elections reflect[ed] the true desires of the affected employees; (2) there was no showing of election irregularities; and (3) there was no substantial deviation from due process requirements." *Summer's Living Sys., Inc.,* 2000 WL 1460041, at *3. First, it would appear that the state-conducted elections reflected the true desires of the affected employees. As pointed out by Intervenor AFSCME, eighty-five percent of the employees in the thirty subject units voted in favor of union representation. Moreover, in nine of the units, there were zero votes cast against union representation. There was also no showing of election irregularities. As Intervenor AFSCME notes, no objections were filed in these elections. Afterwards, there was no decertification petition or challenge to the MERC elections. *Id.*

There was also no apparent deviation from due process requirements. In particular, there was testimony that state-election procedures are as rigorous as the Board's. While MCS suggests that "[t]he State of Michigan's extensive involvement in the election process painted the proceedings with the authority of state government," MCS Br. at 20, there is no credible evidence that the elections did not accord with due process.

Moreover, the Board properly found that the MERC-conducted elections were consistent with the policies and procedures of the Act. As the Board points out, it has been its longstanding policy to recognize as binding the results of state-conducted elections "provided that the state proceedings reflect the true desires of the affected employees, election irregularities are not involved, and there has been no substantial deviation from due process requirements." *Allegheny Gen. Hosp.*, 230 NLRB 954, 955 (1977), *enforcement denied on other grounds*, 608 F.2d 965 (3d Cir.

regard to SLS, the ALJ held that its employees had voted in elections conducted by MERC after the Board's announced change in policy preempted MERC's jurisdiction. Thus, the ALJ dismissed the unfair labor practice allegations as to SLS, finding that the principles of comity should not be applied to the MERC-conducted elections due to MERC's lack of jurisdiction.

In its decision issued on September 25, 2000, the Board affirmed the ALJ's decision to extend comity to the MERC elections that took place before *Management Training* was decided on July 28, 1995, but not to extend comity to the MERC elections that took place after *Management Training* was decided "when [MERC] did not have jurisdiction." *Summer's Living Systems, Inc.,* 2000 WL 1460041. In its decision, the Board, citing *Standby One Associates*, 274 NLRB 952 (1985), found that the ALJ correctly applied the Board's comity policy and adopted the findings of the ALJ as to MCS that "(1) the state-conducted elections reflect the true desires of the affected employees; (2) there was no showing of election irregularities; and (3) there was no substantial deviation from due process requirements." *Summer's Living Systems, Inc.,* 2000 WL 1460041, at *3. The Board further found that "for the reasons stated by the [ALJ] . . . the removal of joint employer DMH from the bargaining table is not such an unusual circumstance as to relieve [MCS] from their bargaining obligation." *Id.* Accordingly, the Board, with minor modifications not pertinent to the present appeals, upheld the unfair labor practice complaints filed against MCS, but dismissed the unfair labor practice complaints against SLS.

In its appeal in Case No. 00-2192, MCS contends that the representation elections should be invalidated because the elections were conducted under the misrepresentation that the State of Michigan was a joint employer. According to MCS, "the post-election departure of the State of Michigan from its role as co-employer was a material change in circumstances that so radically affected relationships at the bargaining table

that the employees lacked any knowledge of the true context in which their votes for unionization were cast." MCS Br. at 7-8.  In Case No. 00-2440, the NRLB cross-petitions for enforcement of its order.  On the other hand, AFSCME in its appeal in Case No. 00-2451 argues that the Board erred in not extending comity to the elections that MERC conducted after *Management Training* was decided.

### DISCUSSION

Before addressing the merits of the Board's decisions to extend comity to the MERC-conducted elections before the date on which *Management Training* was decided, but not to those conducted after *Management Training* was issued, it is useful to consider the key decisions culminating in the Board's change of policy articulated in *Management Training* regarding its jurisdiction over certain private employers with contractual relationships with exempt governmental entities. Initially, in *National Transportation Service, Inc. v. Truck Drivers & Helpers of America, Local Union 728*, 240 NLRB 565 (1979), the NLRB set forth a test for determining whether it would exercise jurisdiction over employers with close ties to an exempt entity:

[I]n this and future cases involving a determination whether the Board should assert jurisdiction [over an employer with close ties to an exempt entity], we shall determine whether the employer itself meets the definition of "employer" in [29 U.S.C. 152(2)],[6] and, if

---

[6] Section 152(2) provides:

(2) The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or *any State or political subdivision thereof,* or any person subject to the Railway Labor Act [45 U.S.C.A. § 151 *et seq.*], as amended from time to time, or any labor organization (other than when acting as an employer), or

declares not how a case shall be decided but how it may with propriety be decided.

The statement, however, was made in a far different context, namely, the extent to which one federal court of appeals should feel itself bound by the decision of another with respect to the validity and scope of a patent. Both courts were governed by the same law and the statement was made in deprecating the appellant's claim that the second court of appeals had given insufficient weight to "comity".  More enlightening for this case, although not dispositive, is this court's recent statement in *NLRB v. St. Luke's Hospital*, 551 F.2d 476 (2d Cir. 1976). There we upheld a finding that an employer had engaged in an unfair labor practice by enforcing the union security clause in a collective bargaining agreement with a union certified by the SLRB to represent a unit which could not have been approved by the NLRB because of the "professional" proviso in § 9(b)(1).  Rejecting the employer's claim to comity, Chief Judge Kaufman said, *id*. at 482 (citations omitted):

Arrangements resulting from state agency proceedings should generally be respected if consistent with federal policies. "Comity" in this sense reflects the desirability of supporting settled relationships in the absence of compelling countervailing reasons. It is clear, however, that the NLRB is not required to defer to state proceedings where federal policy would be undermined.

We would strengthen the last sentence to say "is not required or permitted."

566 F.2d 833, 841-42 (2d Cir. 1977).  Thus, as understood by the Second Circuit in *Long Island College Hospital,* "comity" refers to a rule of convenience or expediency whereby the Board sustains settled issues or relationships, so long as federal policy is not undermined.

explained by the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113 (1895),

"Comity" in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Id.* at 163-64. By extension, the rule of comity also applies to the recognition of federal and state courts of their respective judgments in our federal system of governance. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999)("Most essentially, federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design.") However, "comity," in this sense, is not limited to the recognition of judicial acts. *See Calderon v. Thompson*, 523 U.S. 538, 552 (1998) ("Comity is not limited to the judicial branch of a state government.") As used in the present context, "comity" refers to the Board's recognition of state agency proceedings. This use of "comity" was cogently explained by the Second Circuit in *Long Island College Hospital v. NLRB*, as follows:

"Comity" is a notion of highly uncertain content. The Board refers us to the statement in *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488-89, 20 S.Ct. 708, 710, 44 L.Ed. 856 (1900), that

Comity is not a rule of law, but one of practice, convenience and expediency . . . (which) has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question . . . its obligation is not imperative. . . . Comity persuades; but it does not command. It

so, determine whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative.

. . . Once it is determined that the employer can engage in meaningful collective bargaining with representatives of its employees, jurisdiction will be established.

*Nat'l Transp. Serv. Inc.,* 240 NLRB at 565. Thereafter, in *CK Homes, Inc. v. AFSCME*, an unpublished decision of the NLRB Seventh Region Director, decided February 14, 1986 (Case No. 7-RM-1275), the regional director held that the NLRB would not assert jurisdiction over an employer which was a nonprofit Michigan corporation provider of group homes for mentally disabled persons and which had contracted with the MDMH to provide services to these persons. Applying *National Transportation*, the director found as follows:

Thus, the Employer may be considered to be tantamount to an administrative arm of the government and not within the definition of [29 U.S.C. 152(2)]. In addition, the control possessed and exercised over the Employer's operations by the State of Michigan makes meaningful collective bargaining impossible. . . . Accordingly, as the Board does not have jurisdiction over the employer, I shall dismiss the petition.

*CK Homes* at A-9 (J.A. at 272); *Residential Sys. v. UAW*, an unpublished decision of the NLRB Seventh Region Director, decided April 7, 1988 (Case No. No. 7-RC-18529) (J.A. at 274-82).

---

anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 152(2) (emphasis added). *See Pikeville United Methodist Hosp. v. USW*, 109 F.3d 1146, 1151 (6th Cir. 1997).

Subsequently, in *Res-Care, Inc.,* 280 NLRB 670 (1986), the NLRB reaffirmed the basic test set forth in *National Transportation,* but clarified the latter prong of that test:

> In applying [the *National Transportation*] test, however, we will examine closely not only the control over essential terms and conditions of employment retained by the employer, but also the scope and degree of control exercised by the exempt entity over the employer's labor relations, to determine whether the employer in issue is capable of engaging in meaningful collective bargaining.

*Res-Care*, 280 NLRB at 672. On July 28, 1995, the NLRB issued its decision in *Management Training*, overruling the *Res-Care* test and expanding its jurisdiction to include certain private employers who have close ties to exempt governmental entities:

> In *Res-Care*, the Board held that, in deciding whether it would assert jurisdiction over an employer with close ties to an exempt government entity, it would examine the control over essential terms and conditions of employment retained by both the employer and the exempt entity to determine whether the employer in issue is capable of engaging in meaningful collective bargaining. 280 NLRB at 672. After careful consideration of *Res-Care* and its progeny and for the reasons set forth below, we have decided that the test set forth in *Res-Care* is unworkable and unrealistic. Rather, we think that whether there are sufficient employment matters over which unions and employers can bargain is a question better left to the parties at the bargaining table and, ultimately, to the employee voters in each case.

* * *

> [I]n determining whether the Board should assert jurisdiction, the Board will only consider whether the employer meets the definition of "employer" under [29

U.S.C. 152(2) ] of the Act, and whether such employer meets the applicable monetary jurisdictional standards.[7]

*Mgmt. Training*, 317 NLRB at 1358. *See Pikeville United Methodist Hosp. v. USW*, 109 F.3d 1146 (6th Cir. 1997) (holding that, under *Management Training*, the NLRB's jurisdiction was established over a hospital by showing that the hospital was an "employer" as defined by the NLRA, even though the hospital was subject to some local governmental control); *Aramack Corp. v. NLRB*, 179 F.3d 872 (10th Cir. 1999).

**Case No. 00-2192: MCS' Petition**

In this case, we review *de novo* the Board's legal conclusions regarding whether comity should be extended to the MERC-conducted elections held before and after the issuance of *Management Training,* and its findings of fact under the substantial evidence standard. *Harborside Healthcare, Inc. v. NLRB*, 230 F.3d 206, 208-09 (6th Cir. 2000); *United Parcel Serv., Inc. v. NLRB*, 228 F.3d 772, 774-75 (6th Cir. 2000).

As a legal doctrine, comity originally emerged in the context of international law to reflect the recognition by one state or nation of the laws, policies and judicial acts of another. *See* BLACK'S LAW DICTIONARY, 261-62 (7th ed. 1999) ("The comity principle is most accurately characterized as a golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances.")(quoting Thomas Buergenthal & Harold G. Maier, *Public Int'l Law in a Nutshell* 178 (2d ed. 1990)). As

---

[7] As pointed out in *Management Training:* "Sec. 2(2) excludes from the term 'employer' both Federal and state governmental entities as well as 'political subdivisions thereof.'" 317 NLRB at 1359 n.17.