CITY OF LANSING v CARL SCHLEGEL, INC

Docket No. 238839. Submitted July 9, 2003, at Lansing. Decided July 24, 2003, at 9:05 A.M. Leave to appeal sought.

Carl Schlegel, Inc. (Schlegel), a nonunion trucking subcontractor, and the Associated Builders and Contractors of Michigan (ABCM) brought an unfair labor practice charge against the city of Lansing, after Schlegel was fired from a municipal construction project by the project's general contractor, Angelo Iafrate Construction Company (Iafrate), for failure to sign a project labor agreement (PLA). When hired by the city, Iafrate was required to abide by the PLA, which required unionization of all employees involved in the construction project. Similarly, when Iafrate hired Schlegel, Schlegel was asked to sign the PLA, but Schlegel refused to do so and was removed from the job. Schlegel and the ABCM alleged that the city violated MCL 423.210 of the public employment relations act (PERA), by requiring Schlegel to sign the PLA. The Michigan Employment Relations Commission (MERC) dismissed the unfair labor practice charge on the basis that it lacked subject-matter jurisdiction over the dispute, because PERA governs only public employers and their employees, not private employers, like Schlegel. Schlegel and the ABCM appealed.

The Court of Appeals *held*:

1. PERA addresses the bargaining rights and privileges of public employees. The act's definition of "public employee" specifically excludes "a person employed by a private organization or entity that provides services under a time-limited contract with the state . . . ." MCL 423.201(1)(e)(i). Here, the city was not Schlegel's employer; rather, Iafrate hired Schlegel. Thus, Schlegel was not a public employee under PERA. The legislative history of PERA and the amendments to subsection 1(e) indicate that the Legislature specifically meant to exclude from coverage private employers and employees.

2. Schlegel and the ABCM's argument that the use of the PLA in this case was unlawful or prohibited by public policy, because PERA did not adopt exceptions similar to those created in the National Labor Relations Act (NLRA), 29 USC 158(e) and (f), which allowed use of prehire agreements and PLAS, fails. As MERC noted in its decision, it

is equally plausible that the Legislature saw no reason to add similar exceptions to PERA because they were not relevant to public employment, and federal precedent does not demonstrate the illegality of a public employer's use of PLAs under state law. Moreover, the general view is that a public entity's use of a PLA with regard to a proprietary interest in a construction project, as in this case, is more akin to the private employer interest protected under section 158 of the NLRA.

3. Schlegel and the ABCM's argument that MCL 423.210(1)(b) and (c) should be interpreted as allowing any person, not just public employees, to file an unfair labor practice charge, is unsupported by the language of, and intent behind, PERA, as demonstrated by the act's preamble. Again, PERA is directed at public rather than private employees, and it indicates no intent to regulate the labor relations of public employers generally. MERC's decision does not result in a "no man's land" in the area of labor relations for which remedies for violations of the statutes cannot be enforced under state or federal law, because this argument presupposes that the PLA in this case was unlawful, which argument was rejected. Furthermore, MERC's decision does not preclude a challenge on the basis of other state law violations. Any gap in jurisdiction created by the statute must be remedied by the Legislature.

Affirmed.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — PRIVATE EMPLOYERS.

The public employment relations act, MCL 423.201 *et seq.*, only applies to public employers and public employees; a private employer hired by another private entity to work on a municipal construction project is not a public employee under the act. (MCL 423.201[1][e][i].)

*James D. Smiertka*, Lansing City Attorney, and *Jack C. Jordan*, Chief Deputy City Attorney, for the city of Lansing.

*Masud, Patterson & Schutter, P.C.* (by *David John Masud* and *Kraig M. Schutter*), for Carl Schlegel, Inc., and Associated Builders and Contractors of Michigan.

Before: NEFF, P.J., and O'CONNELL and FORT HOOD, JJ.

Neff, P.J. Charging parties Carl Schlegel, Inc. (Schlegel), and Associated Builders and Contractors of Michigan (ABCM) appeal by right from an order entered by the Michigan Employment Relations Commission (MERC) dismissing their unfair labor practice charge against respondent city of Lansing for lack of subject-matter jurisdiction. We affirm.

I

At issue in this case is whether the public employment relations act (PERA), MCL 423.201 *et seq.*, governs a claim of unfair labor practice alleged against respondent city on behalf of a private subcontractor working on a municipal construction project. We hold that PERA does not govern the alleged claim, and therefore MERC properly concluded that it lacked subject-matter jurisdiction in this matter.

II

Respondent was engaged in providing the infrastructure for a new plant on the site of a large-scale construction project involving the overhaul of an existing General Motors plant. Schlegel, a nonunion trucking subcontractor, was hired by the project's general contractor, Angelo Iafrate Construction Company (Iafrate), to deliver aggregate to the project site and to haul away waste and recyclables. When hired by respondent, Iafrate was required to abide by a project labor agreement (PLA), which required unionization of all employees involved in the construction project. Similarly, Iafrate required Schlegel to sign the PLA at respondent's behest. Schlegel refused, and Iafrate removed Schlegel from the job. Schlegel and

ABCM alleged that respondent violated PERA by requiring Schlegel to sign the PLA. MERC held it did not have subject-matter jurisdiction to hear Schlegel's charges that respondent violated MCL 423.210(1)(b) and (c) of PERA, because PERA grants MERC jurisdiction over disputes between public employers and their employees; whereas Schlegel was a private employer asserting the rights of its employees to be free to choose whether to join a union.

III

MERC decisions "are reviewed on appeal pursuant to Const 1963, art 6, § 28, and MCL 423.216(e) . . . ." *Grandville Muni Executive Ass'n v Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996). MERC's findings of fact "are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Id.* "This evidentiary standard is equal to 'the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance.' " *St Clair Co Ed Ass'n v St Clair Co Intermediate School Dist*, 245 Mich App 498, 512-513; 630 NW2d 909 (2001), quoting *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994). Legal conclusions made by MERC "may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Grandville Muni Executive Ass'n, supra* at 436. MERC must "give due deference to the review conducted by the referee, in particular with respect to the findings of credibility." *Detroit v Detroit Fire*

*Fighters Ass'n, Local 344, IAFF*, 204 Mich App 541, 554; 517 NW2d 240 (1994).

On appeal, Schlegel and the ABCM first argue that MERC erred by deciding it lacked subject-matter jurisdiction to hear the instant matter. "The PERA governs public sector labor law . . . ." *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff*, 238 Mich App 310, 313; 605 NW2d 363 (1999), aff'd in part 463 Mich 353 (2000), citing *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 629; 227 NW2d 736 (1975). "The MERC is the sole state agency charged with the interpretation and enforcement of this highly specialized and politically sensitive field of law." *Id.*

As Schlegel and the ABCM note, under *Bldg & Constr Trades Council, Metro Dist v Associated Builders & Contractors of Mass/RI, Inc*, 507 US 218, 231-233; 113 S Ct 1190; 122 L Ed 2d 565 (1993) (Boston Harbor), public employers are not prohibited, by principles of preemption under the National Labor Relations Act (NLRA), 29 USC 151 *et seq.*, from entering into PLAs when they are purchasing services in the private sector. Therefore, Schlegel and ABCM argue, each state must determine whether the enforcement of PLAs by public employers otherwise violates state law, and because MERC has exclusive jurisdiction to decide all matters under PERA, it erred in failing to exercise its jurisdiction to decide the merits of the instant allegation of unfair labor practices under MCL 423.210 of PERA.

However, PERA addresses the bargaining rights and privileges of public employees, using the term "public employee" to distinguish those individuals covered under PERA from private employees. *Hillsdale Community Schools v Labor Mediation Bd*, 24 Mich

App 36, 40-41; 179 NW2d 661 (1970). PERA, MCL 423.201(1)(e), defines a "public employee" as

> a person holding a position by appointment or employment in the government of this state, in the government of 1 or more of the political subdivisions of this state, in the public school service, in a public or special district, in the service of an authority, commission, or board, or in any other branch of the public service, subject to the following exceptions:
>
> (i) Beginning March 31, 1997, a person employed by a private organization or entity that provides services under a time-limited contract with the state or a political subdivision of the state is not an employee of the state or that political subdivision, and is not a public employee.[1]

Here, respondent was not Schlegel's employer; rather, Iafrate hired Schlegel. Thus, Schlegel was not a public employee under PERA, a fact conceded by Schlegel on appeal. MCL 423.201(1)(e)(i).

PERA does not similarly address the rights and privileges of private employees or define a "private employee." As MERC noted in its decision, the legislative history[2] indicates that subsection 1(e)(i) was enacted[3] to further define the limits of PERA's coverage, i.e., to public employees, and to explicitly exclude from coverage workers hired by private entities that contract with the state. Senate Fiscal Agency Bill Analysis, SB 1015, January 30, 1997.

---

[1] The exception in MCL 423.201(1)(e)(ii) pertains to public school administrators and is inapplicable to this case.

[2] Senate Fiscal Agency Bill Analysis, SB 1015, January 30, 1997. Legislative history may be considered in ascertaining the reason for an act and the meaning of its provisions. *DeVormer v DeVormer*, 240 Mich App 601, 606-608; 618 NW2d 39 (2000).

[3] 1996 PA 543, effective March 31, 1997.

The legislative analysis sets forth the rationale for the amendment:

> The public employment relations Act provides a framework establishing the rights and privileges of public employees. In doing so, the Act also provides a definition of who is a public, as opposed to a private, employee. . . .
>
> Attempts to unionize generally are protected under State law if the employees are public employees, or under Federal law for private employees. [*Id.* at p 1.]

As MERC correctly noted in its decision, the amendment of PERA was sought because "the State had been named as an employer in a number of cases involving attempts to form a union by employees of private companies that had contracted with the Michigan Department of Community Health to run community mental health homes." See, e.g., *AFSCME v Dep't of Mental Health*, 215 Mich App 1, 3-5; 545 NW2d 363 (1996) (vacating a MERC decision finding that group home employees of contractors with funding ties to the Department of Mental Health were covered under the bargaining provisions of PERA, as joint employees of the department and the contractors). Although the National Labor Relations Board had assumed jurisdiction in some cases, it had not always done so. Senate Fiscal Agency Bill Analysis, SB 1015, January 30, 1997, p 1. Thus, the amendment would prevent the state from being drawn into collective bargaining with the many private sector employees who work for contractors doing business with the state. *Id.* We find no substantial or material error of law in MERC's conclusion that PERA's definition of "public employee" does not cover the employees of Schlegel.

Schlegel and the ABCM further argue, in essence, that the use of prehire agreements and PLAs was

unlawful before the 1959 amendments to the NLRA, which created the exceptions set forth in 29 USC 158(e) and (f), and because PERA did not adopt exceptions similar to those added to the NLRA, the use of the PLA in this case is unlawful under PERA. They further contend that respondent's use of the PLA violates public policy underlying PERA in that "public employers under the PERA are absolutely prohibited from providing any form of assistance to *any* unions absent specific, statutory authorization." We find no substantial or material error of law in MERC's rejection of this argument.

MERC found it equally plausible that the Legislature saw no reason to add similar exceptions to PERA because they were not relevant to public employment. Contrary to Schlegel and ABCM's argument, we disagree that precedent from the federal system demonstrates the illegality of a public employer's use of PLAs under state law. See *Ohio State Bldg & Constr Trades Council v Cuyahoga Co Bd of Comm'rs*, 98 Ohio St 3d 214, 217-220; 781 NE2d 951 (2002), which discussed the history and context of the adoption of the exceptions in subsections 158(e) and (f). In that case, the court noted that "the construction-industry proviso to Section 8(e) was inserted to ensure that agreements limiting the contracting of construction site work *remained* legal: 'To the extent that subcontracting agreements were part of the pattern of collective bargaining in the construction industry [prior to 1959], and lawful, Congress wanted to ensure that they remained lawful.'" *Id.* at 217-218, quoting *Woelke & Romero Framing, Inc v NLRB*, 456 US 645, 657; 102 S Ct 2071; 72 L Ed 2d 398 (1982); (emphasis added). Moreover, as noted above, the general view is

that a public entity's use of a PLA with regard to a proprietary interest in a construction project, as in this case, is more akin to the private employer interest protected under the NLRA by the exceptions set forth in subsections 158(e) and (f). *Id.* at 229-234; see also Perritt, *Keeping the Government Out of the Way: Project Labor Agreements under the Supreme Court's Boston Harbor Decision*, 12 Labor Lawyer 69, 88 (Spring, 1996) (observing that "[t]he key to the *Boston Harbor* decision is the distinction between proprietary decisions made by state entities as project managers and regulatory decisions made by state entities as governments").

Nonetheless, Schlegel and the ABCM also argue that MERC erred because the express language of PERA triggers the jurisdiction of MERC in this case. In essence, they argue that under MCL 423.216, "any person" is permitted to file a charge of unfair labor practices, which brings this case within MERC's exclusive jurisdiction over disputes arising under MCL 423.210 of PERA.

MCL 423.216 states in relevant part:

Violations of the provisions of section 10 shall be deemed to be unfair labor practices remediable by the commission in the following manner:

(a) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the commission, or any agent designated by the commission for such purposes, may issue and cause to be served upon the person a complaint stating the charges in that respect, and containing a notice of hearing before the commission or a commissioner thereof, or before a designated agent, at a place therein fixed, not less than 5 days after the serving of the complaint.

Under § 10 of PERA, MCL 423.210(1),

> [i]t shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; (b) to initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization: Provided, That a public employer shall not be prohibited from permitting employees to confer with it during working hours without loss of time or pay; (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization: Provided further, That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative; (d) to discriminate against a public employee because he has given testimony or instituted proceedings under this act; or (e) to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11.

Schlegel and the ABCM argue that unlike subsections a, d, and e of § 10, which refer specifically to "public employees," subsections b and c are not so limited and refer only to a public employer's interference or discrimination. Thus, those latter subsections should be broadly construed to apply to all employees and to include the charges in this case.

Again, we find no substantial or material error of law in MERC's reasoning. PERA is the dominant law governing public employee labor relations, *Rockwell, supra* at 629, and one of its purposes, as stated in its preamble, "is 'to declare and protect the rights and

privileges of public employees.' " *Hillsdale, supra* at 40. The preamble states:

> AN ACT to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act.

The legislative intent, as expressed in the preamble, specifically indicates that PERA is directed at *public* rather than *private* employees and it indicates no intent to regulate the labor relations of public employers generally. While an act's preamble is not controlling authority, it is useful for interpreting an act's purpose and scope. *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991); *King v Ford Motor Credit Co*, 257 Mich App 303; 668 NW2d 357 (2003). Further undercutting Schlegel and ABCM's argument is that the act contains a definition of "public employee," but not "public employer." A court may not speculate regarding legislative intent beyond the words expressed in a statute, and nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself. *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

We find unconvincing the additional argument that MERC's decision results in a "no man's land" in the area of labor relations for which remedies for violations of the statutes cannot be enforced under either federal or state law for lack of jurisdiction. This argument presumes that the use of the PLA in this case, in fact, constitutes an unfair labor practice, which we decline

to accept on the basis of our discussion above, noting the distinction between a PLA emanating from a state's proprietary interests as opposed to a state's regulatory activities. Further, the finding that MERC lacks subject-matter jurisdiction over the charge does not preclude a challenge on the basis of other state law violations. See Perritt, *supra* at 83-91 (discussing potential obstacles other than federal preemption with regard to PLAs on public works projects). Finally, any gap in jurisdiction created under the statute must be remedied by the Legislature, not the courts.

We conclude that MERC's decision that it lacked subject-matter jurisdiction to hear the instant charge did not violate a constitutional or statutory provision and it was not based on a substantial and material error of law. *Grandville Muni Executive Ass'n, supra* at 436.

Affirmed.