# STATE OF MICHIGAN

# COURT OF APPEALS

TAYLOR SCHOOL DISTRICT and TAYLOR
FEDERATION OF TEACHERS, AFT, LOCAL
1085,

      Respondents-Appellants,

v

NANCY RHATIGAN and REBECCA METZ,

      Charging Parties-Appellees.

UNPUBLISHED
December 13, 2016

No.  326128
MERC
LC Nos.  13-000133; 13-000029

Before:  MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

Respondents Taylor School District ("the school district") and Taylor Federation of Teachers, AFT, Local 1085 ("the union") appeal by petition to review the order of the Michigan Employment Relations Commission ("MERC") reversing the findings of the administrative law judge ("ALJ"),[1] and entering a cease and desist order against respondents.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal stems from a labor dispute that arose between the charging parties and respondents after respondents executed a union security agreement.  This case also presents the legal interplay between the union security agreement and 2012 PA 349,[2] which amended the public employment relations act, MCL 423.201 *et seq.* ("PERA"), effective March 28, 2013, and which makes it unlawful to require a public employee to financially support a labor organization. The charging parties are employees of the Taylor Board of Education and members of the bargaining unit represented by the union.  It is undisputed that the union and the school district entered into a collective bargaining agreement ("CBA") in February 2013, and that this CBA

---

[1] The ALJ had recommended the dismissal of the charging parties' unfair labor practices claim against respondents.

[2] 2012 PA 349 is "colloquially called a 'right to work' law."  *UAW v Green*, 302 Mich App 246, 249; 839 NW2d 1 (2013).

governed the issue of wages and terms and conditions of employment for members of the bargaining unit. The union and the school district also executed the union security agreement in February 2013, and while the CBA expires October 1, 2017, the union security agreement expires July 1, 2023.

The union security agreement provides, in pertinent part:

> The Taylor School District and the Taylor Federation of Teachers agree that the Union's duties to persons employed in the bargaining unit require that each unit member share the costs associated with the negotiation and administration of this collective bargaining agreement. Therefore, each person employed in the collective bargaining unit shall either become a member of the Taylor Federation of Teachers and pay dues required of members or agree to pay a service fee in an amount determined by the Union. A service fee will be deducted from the paychecks of persons who fail or refuse to do either. This section describes the process used to accomplish these goals. This agreement is made to reflect the parties' mutual goals of labor peace and bargaining unit continuity which both parties acknowledge to be valuable to each of them.

On August 6, 2013, the charging parties filed unfair labor practice charges against respondents under PERA. After a hearing, the ALJ recommended dismissal of the charges. The charging parties filed exceptions to the ALJ's recommendation with MERC. After reviewing the relevant facts and law, MERC agreed with the ALJ that the charging parties had standing to challenge the union security agreement and that MERC did not have the authority to inquire into the adequacy of consideration supporting the agreement. MERC also agreed with the ALJ that the union security agreement was not required to be of the same duration as the CBA. However, MERC held, contrary to the recommendation of the ALJ, that "the ten-year duration of the Union Security Agreement" was "excessive and unreasonable." MERC further held that the charging parties were correct in their assertion that the union security agreement "compels bargaining unit members to either remain in or financially support a labor organization, a violation of § 9 of PERA[.]" MERC also disagreed with the ALJ's conclusion that the union had not violated its duty of fair representation to the charging parties when it entered into the union security agreement. MERC ordered respondents to cease and desist from enforcing the union security agreement against the charging parties. This appeal followed. This Court granted motions by the Michigan Education Association and the National Right to Work Legal Defense Foundation to file amicus briefs in this appeal.[3]

---

[3] *Taylor School District v Rhatigan*, unpublished order of the Court of Appeals, entered March 4, 2015 (Docket No. 326128).

## II. STANDARD OF REVIEW

In *Calhoun Intermediate School Dist v Calhoun Intermediate Education Ass'n*, 314 Mich App 41, 46; ___ NW2d ___ (2016), this Court set forth the applicable standard of review from a decision of MERC.

> "We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e)." *Van Buren Co Ed Ass'n v Decatur Pub Sch*, 309 Mich App 630, 639; 872 NW2d 710 (2015) (quotation omitted). The MERC's factual findings are "conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Police Officers Ass'n of Mich v Fraternal Order of Police, Montcalm Co Lodge No 149*, 235 Mich App 580, 586; 599 NW2d 504 (1999). "MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Van Buren Co Ed Ass'n*, 309 Mich App at 639. We review de novo the MERC's legal rulings. *St Clair Co Ed Ass'n v. St Clair Intermediate Sch Dist*, 245 Mich App 498, 513; 630 NW2d 909 (2001).

MERC has been entrusted with the interpretation and enforcement of PERA, an area of the law that has been described as very specialized and "politically sensitive[.]" *Van Buren Co Ed Ass'n*, 309 Mich App at 638, quoting *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff*, 238 Mich App 310, 313; 605 NW2d 363 (1999). To the extent that this Court's review of MERC's decision requires review of its application of PERA to the instant facts, "Michigan's judiciary traditionally accords deference to MERC's interpretation of PERA." *Bedford Pub Schools v Bedford Education Ass'n, MEA/NEA*, 305 Mich App 558, 565; 853 NW2d 452 (2014). While this Court is certainly not bound by MERC's ultimate ruling on a question of law, this Court "will respectfully consider [MERC's] construction of a statute and provide cogent reasons for construing the statute differently." *Bedford Pub Schools*, 305 Mich App at 565.

With regard to MERC's factual findings, this Court in *Mount Pleasant Pub Schools v Michigan AFSCME Council 25, AFL-CIO*, 302 Mich App 600, 615; 840 NW2d 750 (2013), articulated the following governing principles:

> "Th[e] evidentiary standard [for factual findings] is equal to the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance." *City of Lansing v Carl Schlegel, Inc*, 257 Mich App. 627, 630; 669 NW2d 315 (2003) (quotation marks and citations omitted). Further, "[r]eview of factual findings of the commission must be undertaken with sensitivity, and due deference must be accorded to administrative expertise. Reviewing courts should not invade the exclusive fact-finding province of administrative agencies by displacing an agency's choice between two reasonably differing views of the evidence." *Amalgamated Transit Union, [Local 1564 v Southeastern Michigan Transportation Authority*, 437 Mich 441, 450; 473 NW2d 249 (1991)]. [*Mount Pleasant Pub Schools*, 302 Mich App at 615.]

This Court reviews de novo issues of statutory construction. *Simpson v Alex Pickens, Jr & Associates, MC, PC*, 311 Mich App 127, 131; 874 NW2d 359 (2015).

### III.  BACKGROUND OF PERA AND 2012 PA 349

PERA is a state statute that governs the vital professional relationship between a governmental agency and its employees. *Van Buren Co Education Ass'n,* 309 Mich App at 640. PERA also reflects the Legislature's intent to make sure that public employees are protected against unfair labor practices by public employers and unions. *Id.*  A violation of PERA is an unfair labor practice pursuant to MCL 423.216, and is remedied in accordance with PERA. *Ranta v Eaton Rapids Pub Schools Bd of Ed*, 271 Mich App 261, 266; 721 NW2d 806 (2006).  A charging party bears the burden of proving an unfair labor practice. *Mount Pleasant Pub Schools*, 302 Mich App at 614.

Section 9 of PERA, MCL 423.209, provides certain rights for public employees with respect to labor organizations.  Before the adoption of 2012 PA 349, section 9 provided, in pertinent part:

> It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice.  [MCL 423.209.]

2012 PA 349 amended section 9 to provide, in pertinent part:

> (1) Public employees may do any of the following:

> (a) Organize together or form, join, or assist in labor organizations; engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection; or negotiate or bargain collectively with their public employers through representatives of their own free choice.

> (b) Refrain from any or all of the activities identified in subdivision (a).

> (2) No person shall by force, intimidation, or unlawful threats compel or attempt to compel any public employee to do any of the following:

> (a) Become or remain a member of a labor organization or bargaining representative or otherwise affiliate with or financially support a labor organization or bargaining representative.

Section 10 of PERA, MCL 423.210, prohibits certain conduct by public employers and labor organizations.  Before the adoption of 2012 PA 349, the relevant portions of section 10, relating to public employers, provided, in pertinent part:

> (1) A public employer or an officer or agent of a public employer shall not do any of the following:

(a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.

* * *

(c) Discriminate in regards to hire, terms, or other conditions of employment to discourage membership in a labor organization. However, this act or other law of this does not preclude a public employer from making an agreement with an exclusive bargaining representative as described in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative.

2012 PA 349 amended subsection (1)(c) to read simply, "Discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization." See MCL 423.10(1)(c) as amended by 2012 PA 349.

Both before and after the adoption of 2012 PA 349, PERA prohibited a labor organization or its agents from acting to:

(a) Restrain or coerce public employees in the exercise of the rights guaranteed in section 9. This subdivision does not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership.

* * *

(c) Cause or attempt to cause a public employer to discriminate against a public employee in violation of subsection (1)(c). [MCL 423.10(2)(a) and (c), formerly MCL 423.10(3)(a) and (c) prior to amendment by 2012 PA 349.]

V. IMPAIRMENT OF CONTRACTS AND PROSPECTIVE/RETROSPECTIVE APPLICABILITY OF 2012 PA 349

Respondents notably do not ask this Court to hold that 2012 PA 349 constitutes an unconstitutional impairment of contractual obligations. U.S. Const, art I, § 10 states, in part, "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." Similarly, Const 1963, art 1, § 10 states: "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." These provisions have typically been interpreted as providing coextensive protections. See *AFT v Michigan*, 497 Mich 197, 222-223; 866 NW2d 782 (2015).

Yet, it is a fundamental and underlying premise of respondents' position on appeal that 2012 PA 349 indeed impermissibly impairs the union security agreement that respondents entered into shortly before the effective date of the statutory amendment. Respondents contend, for example, that "the Legislature knew that such legislation [i.e., if 2012 PA 349 were to apply to union security agreements in effect prior to the effective date of the statutory amendment] would contravene the Impairments Clauses of the Constitution of the United States and the State

of Michigan." Therefore, according to respondents, citing to Section 10(5) of 2012 PA 349, MCL 423.10(5), the Legislature "expressly permitted parties to create, retain and enforce union security provisions which were in effect prior to the statute's effective date." Respondents thus contend that the Legislature made clear in the statute that it prospectively applied only to agreements that were entered into after the effective date of the statute.

On close inspection, however, it is apparent why respondents have limited their "impairment of contract" position to that of a presumption and have not advanced it as a constitutional argument: the premise is simply a fallacy.

First, it is noteworthy that the constitutional impairment of contract provisions, by their express terms, characterize their proscriptions as applying to the *passage* and the *enactment* of legislation impairing contracts. See U.S. Const, art I, § 10 ("No State shall . . . *pass* any . . . Law impairing the Obligation of Contracts"); Const 1963, art 1, § 10 ("No . . . law impairing the obligation of contract shall be *enacted*.") (Emphasis added). To "enact" in the context of legislation refers to the Legislature's power to "make [a legislative bill] into law by authoritative act, to pass," while a statute's "effective date" refers to the "date on which a statute . . . becomes enforceable or otherwise takes effect." *Black's Law Dictionary* (9th ed), pp 592, 606. See also *Frey v Dep't of Mgt & Budget*, 429 Mich 315, 340; 414 NW2d 873 (1987) (noting the difference between enactment by the Legislature and effective date).

2012 PA 349 was passed by both houses of the Michigan Legislature, signed by the Governor, and thus "enacted," no later than December 11, 2012.[4] The union security agreement at issue in this case was not entered into by respondents until February 2013. In enacting 2012 PA 349, the Legislature therefore did not in any way act to impair the union security agreement, because the union security agreement simply did not exist at the time of the statutory enactment. In actuality, it was not the Legislature that was seeking to impair an existing contract; to the contrary, it was respondents who were seeking to impair already-enacted (although not yet effective) legislation.[5]

---

[4]See 2012 PA 349, http://www.legislature.mi.gov/documents/2011-2012/publicact/htm/2012-pa-0349.htm (last visited December 6, 2016) (indicating approval by the Governor on December 11, 2012).

[5] Further, even if a contract is lawful when entered into, subsequent changes in law may render enforcement of that contract unlawful. See *Grand Rapids & I R Co v Cobbs & Mitchell*, 203 Mich 133, 142; 168 NW 961 (1918), quoting *L & NR R v Mottley*, 219 US 467; 31 S Ct 265; 55 L Ed 297 (1911) ("We forbear any further citation of authorities. They are numerous and are all one way. They support the view that, as the contract in question would have been illegal, if made after the passage of the commerce act, it cannot now be enforced against the railroad company, even though valid when made. If that principle be not sound, the result would be that individuals and corporations could, by contracts between themselves, in anticipation of legislation, render of no avail the exercise by Congress, to the full extent authorized by the Constitution, of its power to regulate commerce."); see also *Gillette Comm'l Ops North Am & Subsidiaries v Dep't of*

Second, respondents' assertion regarding section 10(5) assumes too much. Section 10(5) of 2012 PA 349 states:

> An agreement, contract, understanding, or practice between or involving a public employer, labor organization, or bargaining representative that violates subsection (3) is unlawful and unenforceable. *This subsection applies only to an agreement, contract, understanding, or practice that takes effect or is extended or renewed after March 28, 2013.* [MCL 423.210(5) (emphasis added).]

Therefore, as the italicized language reflects, there indeed exists a statutory basis for limiting certain of the proscriptions of 2012 PA 349 to agreements that take effect after the effective date of the statutory amendment. However, respondents fail to recognize (or acknowledge) that the limitation expressly applies only to "[t]his subsection." "This subsection" is MCL 423.210(5), which by its terms expressly applies only to agreements that violate subsection (3) of section 10, MCL 423.210(3).[6]

---

*Treas*, 312 Mich App 394, 414; 878 NW2d 891 (2015), quoting *Exxon Corp v Eagerton*, 462 US 176, 190; 103 S Ct 2296; 76 L Ed 2d 497 (1983) ("a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment.) Rather, to impermissibly impair contracts, a law must act on the contract itself, rather than its subject matter, such as, for example, a statute prohibiting the enforcement of land contracts. See *Thompson v Auditor General*, 261 Mich 624, 635; 247 NW 360 (1933).

[6] MCL 423.210(3) provides:

> (3) Except as provided in subsection (4), an individual shall not be required as a condition of obtaining or continuing public employment to do any of the following:
>
> (a) Refrain or resign from membership in, voluntary affiliation with, or voluntary financial support of a labor organization or bargaining representative.
>
> (b) Become or remain a member of a labor organization or bargaining representative.
>
> (c) Pay any dues, fees, assessments, or other charges or expenses of any kind or amount, or provide anything of value to a labor organization or bargaining representative.
>
> (d) Pay to any charitable organization or third party any amount that is in lieu of, equivalent to, or any portion of dues, fees, assessments, or other charges or expenses required of members of or public employees represented by a labor organization or bargaining representative. [MCL 423.210(3).]

However, MERC did not find a violation of MCL 423.210(3) in this case. The statutory limitation to agreements that take effect after the effective date of the statutory amendment is therefore not applicable here. Moreover, the fact that the Legislature expressly restricted the applicability of that statutory limitation to agreements that violate MCL 423.210(3) speaks volumes. A judicial extension of that limitation to *all* agreements made before the effective date of 2012 PA 349 that violate *any* provision of PERA would contravene the plain language of the statute. See *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 536; 669 NW2d 594 (2003) (noting that a proviso limiting the scope of a statute's application must be interpreted according to its plain meaning). Thus, contrary to respondents' contention, the proscriptions of 2012 PA 349 (other than those in section 10(3)) do not apply *only* to contracts entered into after the effective date of the statutory amendment.

From this analysis flow two conclusions that inform our analysis going forward. First, there simply is no impairment of contract issue here. Second, 2012 PA 349 (as applied here) is not limited to agreements entered into after the effective date of the statutory amendment.

Having said that, we recognize that statutes and statutory amendments generally apply prospectively, absent specific language of the Legislature to the contrary. *Brooks v Mammo*, 254 Mich App 486, 493; 657 NW2d 793 (2002). In this case, however, as discussed above, the Legislature explicitly adopted (in Section 10(5) of 2012 PA 349, MCL 423.10(5)) a *limited* prospectivity, and thus at least implicitly indicated some retrospective applicability of 2012 PA 349 (outside the scope of that limitation). See *STC, Inc*, 257 Mich App at 536. We note, however, that retrospective applicability is a term that generally is used to denote applicability to "a pre-enactment cause of action." *In re Certified Questions (Karl v Bryant Air Conditioning Co)*, 416 Mich 558, 331 NW2d 456 (1982). Here, there was no "cause of action" before 2012 PA 349 was enacted, or even before its effective date. Moreover, "[a] statute is not regarded as operating retrospectively [solely] because it relates to an antecedent event." *Hughes v Judges' Retirement Board*, 407 Mich 75, 86; 282 NW2d 160 (1979). And 2012 PA 349 did not "take[] away or impair[] vested rights acquired under existing laws, or create[] a new obligation and impose[] a new duty, or attach[] a new disability with respect to transactions or considerations already past". *Id*. at 85; *Ballog v Knight Newspapers, Inc*, 381 Mich 527, 533–534; 164 NW2d 19 (1969). Therefore, we are persuaded that at least some retrospective applicability of 2012 PA 349 is appropriate in the instant case and called for by the plain language of the legislation itself.

We need not decide in this case just how far that retrospective applicability extends, but at a minimum conclude, under the circumstances before us, that 2012 PA 349 properly applies to agreements entered into after the enactment of that statutory amendment but before its effective date. With that backdrop, and with the above conclusions in mind, we will proceed to assess MERC's conclusions regarding the unfair labor practice charges against respondents, and will consider the unfair labor practice charges in the context of respondents' actions—after the effective date of 2012 PA 349—to enforce the provisions of the union security agreement.

-8-

### III. UNFAIR LABOR PRACTICE CHARGES – SCHOOL DISTRICT

On appeal, respondents contend that MERC erred in concluding that the school district committed unfair labor practices in violation of section 10 of PERA, specifically MCL 423.210(1)(a) and (c). We disagree.

### A. VIOLATION OF SECTION 10(1)(a) OF PERA

In *In re Michigan State Univ (Police Department)*, MERC Decision & Order (Case No. C10 I-230), issued November 7, 2012, p 11, MERC recognized that a claim under section 10(1)(a) of PERA requires proof of "whether the employer's actions tend to interfere with the free exercise of employee rights." This will be the threshold determination, and the employer's motives for the unlawful action and the employee's subjective reactions are not determinative. *Id*.

> This is the same test utilized in cases arising under Section 8(a)(1) of the National Labor Relations Act (NLRA), a provision which is essentially identical to Section 10(1)(a) of PERA. The [United States] Supreme Court has held that some conduct is "so inherently destructive of employee interests" that it may be deemed proscribed without need for proof of an underlying improper motive. *NLRB v Great Dane Trailers, Inc*, 388 US 26 [, 34; 87 S Ct 1792; 18 L Ed 2d 1027] (1967). [*In re Michigan State Univ*, at p 11.]

However, if the "adverse effect of the discriminatory conduct on employee rights was comparatively slight," a charging party must prove a discriminatory motive behind the employer's conduct if the employer has offered "legitimate and substantial business justifications" for the conduct. *Great Dane Trailers*, 388 US at 34.

In the instant case, MERC concluded that the school district violated section 10(1)(a) of PERA "by coercing Charging Parties to financially support the Union." Respondents challenge this legal conclusion, stating that because the union security agreement was executed and ratified before the March 28, 2013 effective date of 2012 PA 349, the charging parties did not have a right protected pursuant to section 9 of PERA to be free of any obligation to financially support the union. While respondents are correct that 2012 PA 349 was not in effect at the time the union security agreement was executed and ratified, we disagree with respondents' analysis of this issue. It is undisputed that when the charging parties filed their unfair labor practice charges in August 2013, PERA protected their right to be free of any responsibility to financially support a labor organization. MCL 423.209(1)(b), (2)(a). And the charging parties' unfair labor practice charges in the lower tribunal challenged the *enforcement* of the union security agreement, asserting that its enforcement (after the effective date of 2012 PA 349) violated their newly existing rights under PERA.

While respondents note that, under PERA, union security agreements such as the one in this case were lawful before March 28, 2013, the pivotal issue here is not so much the validity of the agreement itself, but rather whether its enforcement violated protected rights under PERA. Section 9 now clearly provides that the charging parties have the right to refrain from financially supporting a labor organization, and the enforcement of the union security agreement against the

charging parties violates that protected right. We therefore conclude that MERC did not commit a substantial error of law in concluding that the school district had committed an unfair labor practice in violation of section 10(1)(a) of PERA, regardless of the school district's motive in seeking enforcement of the agreement. *Van Buren Co Ed Ass'n*, 309 Mich App at 639; *Great Dane Trailers*, 388 US at 34.

MERC found that the union security agreement's length of 10 years was "excessive and unreasonable," noting that the school district and the union were "attempting to nullify a state law for the next ten years." Notably, MERC also observed that the effect of enforcing the 10-year security agreement would compel bargaining unit members to remain in or financially support the union, in violation of the rights established under section 9 of PERA. Under the circumstances of this case, we conclude that the school district's efforts to enforce the union security agreement against the charging parties can fairly be characterized as interfering with, restraining, or coercing public employees in the exercise of their right, guaranteed by section 9 of PERA, to choose not to support a labor organization. MCL 423.209(1)(b), (2)(a). Accordingly, MERC's ruling that the charging parties had been coerced into financially supporting the union in violation of their existing rights pursuant to MCL 423.209(2)(a) was grounded in a fair and reasonable interpretation of PERA. *Calhoun Intermediate School Dist*, 314 Mich App at 46.

## B. VIOLATION OF SECTION 10(1)(c) OF PERA

MERC has articulated the following test to be used in determining whether a violation of section 10(1)(c) of PERA has occurred:

> Section 10(1)(c) of the Act prohibits a public employer from discriminating against employees in order to encourage or discourage membership in a labor organization. The elements of a prima facie case of unlawful discrimination under PERA are, in addition to the existence of an adverse employment action, (1) union or other protected activity; (2) employer knowledge of that activity; (3) anti-union animus or hostility toward the employee's protected rights; and (4) suspicious timing or other evidence that protected activity was a motivating cause of the alleged discriminatory action. [*In re Warren Consolidated Schools*, MERC Decision & Order (Case No. C09 A-001), issued February 20, 2015.]

This test is similar to the test used under federal law relative to claims under the National Labor Relations Act ("NLRA"). *Kentucky General, Inc v NLRB*, 177 F3d 430, 435 (CA 6, 1999). To establish a claim under both sections 8(a)(1) and (3) of the NLRA, it must be established that "(i) an individual was engaged in a protected activity, (ii) the employer was aware of the protected activity, and (iii) that the employee's protected activity motivated the adverse treatment." *Id*. at 435.

Respondents contend that the first element of this test is not met, because the charging parties did not engage in protected activity under section 9 of PERA. As stated previously, however, the charging parties have an existing protected right to refrain from financially supporting a labor organization, MCL 423.209(2)(a), and MERC did not commit a substantial or material error of law in holding that enforcement of the union security agreement violates and

infringes on that right. Accordingly, the charging parties were engaging in a protected activity by refusing to pay union dues or fees under the union security agreement.

In a very cursory argument, respondents also contend that there is no evidence of discrimination or hostility to the charging parties' rights where the union security agreement affected the entire bargaining unit as a whole, or that such hostility was a motivating factor in the school district's decision to enter into the union security agreement. We disagree.

In *In re Warren Consolidated Schools*, MERC observed that "the charging party must present substantial evidence from which a reasonable inference of discrimination may be drawn." We conclude that MERC did not clearly err in finding that such evidence had been presented in this case. The school district not only executed the union security agreement on the eve of the effective date of legislation that dramatically altered labor relations in Michigan and made such union security agreements unlawful, but it did so after that legislation had been passed by both houses of the Michigan Legislature and signed by Michigan's Governor. Under such circumstances, it is a reasonable inference that the school district acted with hostility toward the charging parties' right to refrain from financially supporting a labor organization, and that this hostility was a motivating factor in its entry into a 10-year union security agreement that purported to eliminate the exercise of this right by the charging parties for a full decade following its statutory enactment. Further, at the time of its attempted enforcement of the union security agreement, the school district was definitively aware that the charging parties then possessed the statutory right not to financially support the union.

Further, MERC did not err by concluding that the charging parties incurred an adverse employment action arising from the school district's violation of MCL 423.210(1)(c). As noted earlier in this opinion, MERC found that the charging parties "suffered an adverse employment action in regard to their wages because they will be forced to pay agency fees to the union." This Court has defined an adverse employment action in the following manner:

> In *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999), we defined an adverse employment action as an employment decision that is "materially adverse in that it is more than [a] 'mere inconvenience or an alteration of job responsibilities' " and that "there must be some objective basis for demonstrating that the change is adverse because a " 'plaintiff's "subjective impressions as to the desirability of one position over another" [are] not controlling.' "

> Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." [*Pena v Ingham Co Rd Comm*, 255 Mich App 299, 311-312; 660 NW2d 351 (2003) (citations omitted).]

Further, what constitutes an adverse employment action will be determined on a case by case basis. *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009). An

"exhaustive list" of what amounts to an adverse employment action does not exist, and this determination will vary according to the specific circumstances of each case. *Chen*, 284 Mich App at 201. We conclude that MERC's finding that the charging parties suffered an adverse employment action in regard to their wages as a result of being forced to pay fees to the union (thus essentially decreasing their wages) is not based on a substantial or material error of law. *Calhoun Intermediate School Dist*, 314 Mich App at 46.

Finally, respondents challenge MERC's holding that the union security agreement was executed in an attempt to encourage the charging parties to maintain membership in a labor organization. Respondents contend that this conclusion was erroneous, because union security agreements are intended to require financial contributions from public employees who did not wish to be members of a labor organization. While recognizing the nuances of this argument, it was indeed reasonable for MERC to reach the conclusion it did under the facts of this case. Specifically, the school district, by entering into the union security agreement, required, and essentially coerced, public employees to financially support a labor organization for a 10-year period in contravention of a state law protecting their rights to not do so. On this record, MERC reached a sound legal conclusion that, by doing so, the school district acted in a discriminatory manner that encouraged membership in the union. *Id.*[7]

## IV. DUTY OF FAIR REPRESENTATION – UNION

Respondents argue in part that MERC erred by concluding that the union breached its duty of fair representation by entering into the union security agreement shortly before 2012 PA 349 came into effect (but after it had been passed by the Legislature and signed into law by the Governor). We disagree.

A union's duty of fair representation provides protection for members of a bargaining unit who have surrendered their right to strike individual bargains with their employer. See *Humphrey v Moore*, 375 US 335, 342; 84 S Ct 363; 11 L Ed 2d 370 (1964). This duty was developed in the federal courts in a series of cases under the Railway Labor Act, and later extended to unions certified under the National Labor Relations Act (NLRA). *Goolsby v Detroit*, 419 Mich 651, 661; 358 NW2d 856 (1984). In *Goolsby*, 419 Mich at 660 n 5 (citation omitted), the Michigan Supreme Court recognized that "PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA on labor organizations representing private sector employees." This duty has been described as being fiduciary in nature, and a relationship marked by traits of "fidelity, of faith, of trust, and of confidence." *Goolsby*, 419 Mich at 662, quoting *Vaca v Sipes*, 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967). The *Goolsby* Court further specified:

---

[7] We note that even were we to conclude that MERC erred in finding that the school district violated PERA, we would nonetheless find the union security agreement unenforceable against the charging parties due to the union's breach of its duty of fair representation, as discussed later in this opinion.

-12-

In *Vaca*, *supra*, 386 US at p 177; 87 S Ct at p 909, the Supreme Court of the United States made it clear that a union's duty of fair representation is comprised of three distinct responsibilities: (1) "to serve the interests of all members without hostility or discrimination toward any", (2) "to exercise its discretion with complete good faith and honesty", and (3) "to avoid arbitrary conduct". A union's failure to comply with any one of those three responsibilities constitutes a breach of its duty of fair representation. [*Id.* at 664.]

A breach of the duty of fair representation on the part of a union therefore occurs where the union's conduct toward one of its members of the collective bargaining unit "is arbitrary, discriminatory, or in bad faith." *Id.* at 661, quoting *Vaca*, 386 US at 190. The conclusion that a union acted arbitrarily does not require a finding of bad faith. *Id.* at 679. Recognizing that courts in Michigan ought not to interpret a union's duty to refrain from engaging in arbitrary conduct narrowly, the *Goolsby* Court provided the following guidance concerning what amounts to arbitrary conduct:

In addition to prohibiting impulsive, irrational, or unreasoned conduct, the duty of fair representation also proscribes inept conduct undertaken with little care or with indifference to the interests of those affected. We think the latter proscription includes, but is not limited to, the following circumstances: (1) the failure to exercise discretion when that failure can reasonably be expected to have an adverse effect on any or all union members, and (2) extreme recklessness or gross negligence which can reasonably be expected to have an adverse effect on any or all union members. [*Id.* at 679.]

A union's violation of its duty of fair representation related to a union security agreement can be remedied, as MERC did here, by, *inter alia*, ordering that the union and employer cease and desist from attempting to terminate, or to cause the termination of, a charging party for failing to pay union dues or union fees as required by that agreement. See, e.g., *HC Macaulay Foundry Co v NLRB*, 553 F2d 1198 (CA 9, 1977). Here, MERC concluded that the union acted unlawfully and unreasonably, ultimately determining that the union acted arbitrarily, that it discriminated against some of its bargaining unit members, and that it was indifferent to the interests of those members. MERC noted that the union was aware of the pending effective date of 2012 PA 349 when it negotiated for and ratified the union security agreement that it knew would compel unwilling members of the bargaining unit to support it financially for 10 years beyond the effective date of that legislation. MERC thus concluded that the union committed an unfair labor practice in violation of sections 10(2)(a) and (c) of PERA, MCL 423.210(2)(a) and (c).

It is undisputed in this case that the union's execution and ratification of the 10-year union security agreement (requiring its bargaining unit members to financially support it) occurred after the passage and signing into law (and shortly before the effective date of) a significant state law that greatly impacted labor relations and that rendered such a requirement unlawful. Additionally, this agreement was signed almost contemporaneously with a CBA that included a 10 percent reduction in wages, suspension of pay increases, and other conditions that negatively impacted the wages and benefits of the teacher employees of the school district. Under these circumstances, we conclude that it was indeed reasonable for MERC to conclude

that the union took deliberate action, in entering into the union security agreement to its own financial advantage, that would essentially subvert and undermine the plain language and intent of state law in a manner that was reckless and indifferent to the interests of persons to whom it owned a duty of fair representation. *Goolsby*, 419 Mich at 679. While respondents counter that the union had broad discretion to represent the bargaining unit, and that the union acted in a manner that protected the best interests of the bargaining unit as a whole in times of economic turmoil, *id.* at 665, MERC rejected this argument, impliedly concluding that the union acted to sustain and protect itself financially, and that it had not acted in accordance with its fiduciary duty to demonstrate "fidelity, of faith, of trust, and of confidence" to its members. *Goolsby*, 419 Mich at 662 (citation omitted). Under the circumstances of this case, and given the timeline of events leading up to the execution of the union security agreement under the wire of the effective date of 2012 PA 349, and the signing of a CBA that substantially negatively impacted union members, *id.* at 679, MERC's conclusion that the union's conduct rose to the level of arbitrary, discriminatory, and indifferent conduct in violation of its duty of fair representation found support in the record and was not based on a substantial and material error of law. *Calhoun Intermediate School Dist*, 314 Mich App at 46.[8]

Having concluded that MERC's decision should be affirmed on the grounds specified in its opinion and order, we do not address the charging parties' alternate grounds for affirmance.

Affirmed.


/s/ Jane E. Markey
/s/ Mark T. Boonstra

---

[8] We find the dissent's reliance on *Ann Arbor Fire Fighters Local 1733*, MERC Decision & Order (Case No. CU88 F-34) (1990), to be inapposite, inasmuch as our holding is not premised on a finding that the duration of the union security agreement alone constituted a *per se* violation of the union's duty of fair representation.